FIRST NAT. BANK OF CROWLEY v.
ANDRUS.

No. 2126.

Court of Appeal of Louisiana. First Circuit.

May 8, 1940.

Pugh & Buatt, of Crowley, for appellant.

DeBellevue & Aaron, of Crowley, for appellee.

DORE, Judge.

This is an ejectment proceeding brought by a landlord against its tenant under the provisions of Section 2155 of the Revised Statutes, as amended by Act No. 55 of 1926. The petition alleges that plaintiff bank owns in fee simple 907.49 acres of land situated in the Parish of Acadia, of which acreage 320.74 acres are prairie lands, 414.44 acres are woodland, and 172.31 acres are swampland; and it further alleges that plaintiff has leased the 320.74 acres of prairie land to the defendant for agricultural purposes during the past several years under oral lease from year to year in consideration of 37.5 per centum of the rice raised thereon; that by oral lease, the bank, in the last part of 1938 or the early part of 1939, leased the said land to defendant for the crop year of 1939; that defendant planted part of the said land in rice; that under said oral lease it was agreed that the lease would terminate on December 1, 1939, or as soon as the crops should be harvested and removed; that the said crops have been harvested and removed and that the lease has terminated by the expiration of its terms.

It is alleged that legal notice to vacate was served on the defendant on December 21, 1939, and that he refuses to vacate the premises. This suit was filed on January 2, 1940, praying for a rule to issue against the defendant to show cause why he should not be ordered to vacate.

The defendant filed an exception of vagueness, to which plaintiff answered by supplementing its petition and setting out that the lease for 1939 was to terminate not earlier than December 1, 1939, and that in the event the rice crop could not be harvested and removed prior to that date the lease was to terminate when the said crops were harvested and removed, and that the crops for 1939 were harvested and removed prior to December 1st. Other allegations

were made pertaining to certain details of where and with whom the lease was made and how the notices to vacate were given.

The defendant admitted that the plaintiff had leased this land to him for several years prior to 1939, and alleged that the lease covered the whole tract of 907.49 acres. He admits that he planted a part of the prairie land in rice in the year 1939, and that he had ·harvested and removed the rice crop therefrom prior to December 1, 1939. He denies that the lease expired on December 1, 1939, or that any fixed date was set for its termination.

Defendant alleges that during the month of January, 1934, he moved on the said land and began to farm it with the consent of the plaintiff bank; that he farmed the land from year to year and· paid the rent thereon; that it was customary for him to get instructions from the bank in the spring and in July of each year for preparing and plowing the land for the next year's crop; that pursuant to this custom, during the spring and during the month of July, 1939, he was instructed by the officers of the· bank to begin plowing some of the land for the 1940 crop; that relying on said instructions and the customary dealings between plaintiff and himself, he proceeded to plow and prepare a part of the lands for the 1940 crop, and had no notice that he was not to be given the land for the 1940 crop until he received a notice from the bank on December 8, 1939, advising him that he would not be permitted to farm said land for the year 1940.

Defendant sets up four defenses, the last three being pleaded in the alternative, as follows:

(1) That by reason of custom between the plaintiff and himself and of the instructions given him to plow some of the land for the 1940 crop, there was an oral or implied agreement for him to lease the land for that year on the same basis as it had been leased and farmed the previous years; (2) that if there was no contract of lease for the year 1940, the action of the bank in getting him to plow the land in the summer of 1939 for the crop of 1940 led him to believe that he was to farm the land in 1940 as in previous years, and caused him to make financial arrangements for the 1940 crop, and therefore the bank is estopped from denying that there was a lease for 1940; (3) that if the court finds that there was not a lease for 1940, and that the bank is not estopped from denying the existence of such a lease, then he alleges that there was no time fixed for the termination of the lease; that he finished the harvesting and removal of his 1939 rice crop on November 2, 1939, and continued to reside on the said land and continued to prepare the same for the 1940 rice crop, unmolested, until December 8, 1939, more than thirty days from the time he finished harvesting and removing the crops, and for that reason a tacit reconduction of the lease took place for the 1940 crop year; and (4) that, in the event the court should hold that he is not entitled to remain and farm the said land, he avers that he plowed 110 acres and harrowed 30 acres of the said land, in good faith, for the 1940 crop year, and that his services in that connection are worth, and he is entitled to be paid therefor, the sum of $135.

The trial court found that a lease to defendant existed for the 1940 crop year, and dismissed plaintiff's suit. Plaintiff has appealed.

As the land belongs to the plaintiff, it is incumbent on the defendant to show some right on his part to remain on the land for the 1940 crop. This right he must show in one of three ways: (1) By showing an expressed or implied contract of lease for the year 1940; (2) by an estoppel; and (3) by a reconduction of the lease of 1939. From the evidence in this case the first and second ways rather support each other and are so allied that we shall discuss the evidence relative thereto as a whole.

We gather from the evidence that in the fall of 1933 plaintiff leased to the defendant by oral agreement for the year 1934, on the basis of 37.5 of the rice crop as rental, some 900 acres of land situated in the Parish of Acadia, of which 300 acres were suitable for cultivation. At the time of the lease, the land was occupied by a tenant farmer, and, on that account, defendant did not move on the property until the first part of January, 1934. There is no evidence to the effect that the tenant for the year 1933 had plowed or prepared any portion of the land for the 1934 crop, but, on the contrary, defendant testified that the plaintiff bank instructed him to plow, cultivate and plant one half of the open land for his 1934 crop; and that during the summer and fall of 1934 plaintiff instructed defendant to plow and prepare the remainder of the open land for the 1935 crop year. This is not denied by the plaintiff.

Defendant testified further that the same custom was followed for the leasing of the property for the succeeding years up to and including the year 1939, and that this custom prevailed for the 1940 crop year; that is, in the summer he would be instructed by the plaintiff to plow and prepare a certain portion of the land for the next year's crop and he would follow these instructions by summer and fall plowing.

Plaintiff has made only a feeble attempt to prove the allegation in its petition that "under oral lease in the last part of the year 1938 or the early part of the year 1939" it leased the prairie land to defendant for agricultural purposes for the 1939 crop year. The president of the bank, who was in charge of leasing plaintiff's lands, upon being questioned with reference to the conversation when this oral lease is supposed to have been made, stated: "I don't recall any such conversation." We are of the opinion that the property was leased for the year 1939 under the same procedure which had existed between the parties ever since 1934; that procedure being the plowing and preparing, under instructions from plaintiff or with its full knowledge, of the land for the crop of the following year, the defendant thereupon being retained the following year without any question or further understanding.

Defendant testified that, as was customary between himself and the bank, he plowed and prepared some 110 acres in the summer and fall of 1939, and harrowed some 30 acres after November 3, 1939, for the 1940 crop year and that therefore, like in former years, there was a tacit or implied lease for the 1940 crop year. The 1939 crop had been harvested and removed by November 3, 1939. It is not disputed that he plowed and prepared the 110 acres and harrowed the 30 acres in preparation for the 1940 crop year. The defendant has abundantly proven, not only that it was the custom between himself and plaintiff, but that it is the prevailing custom in his neighborhood that when the tenant does summer and fall plowing for the ensuing year the land is considered leased to the tenant for the ensuing year. The plaintiff attempted unsuccessfully to show otherwise. The testimony offered by the plaintiff is to the effect that when preparation of the land by the tenant is made for the following year and the tenant is not to be retained, then the tenant is paid for his services, there being, however, always an actual understanding between the two to that effect. According to this testimony, it is not so much a matter of custom as it is a matter of specific understanding and arrangement. In the case at bar it is clear from the evidence that plaintiff and defendant had no such specific understanding and arrangement.

In the fall of 1939 defendant harvested and removed the rice crop from plaintiff's land and on November 3, 1939, delivered warehouse receipts covering all of said crop to the plaintiff bank. The crop was not sold at that time, nor up to the time of the filing of the instant suit, and consequently defendant sought financial assistance from the bank. He was thereupon instructed by the president of the bank to cut wood from the lands and to sell the same in order to obtain means of subsistence through the winter and until the spring advances.

Although the 1939 rice crop had been harvested and removed and the warehouse receipts delivered to plaintiff by November 3, 1939, plaintiff did nothing to inform defendant that their former custom was no longer in effect, and that it did not intend that he was to farm the property in 1940, until December 8, 1939, then too late, according to the evidence, for defendant to obtain the lease of another suitable farm.

We are of the opinion that there existed a tacit or implied contract of lease between the parties for the 1940 crop year. Even if such were not the case, since it is clear from the evidence that the defendant was led to believe, in good faith, that such a tacit or implied contract of lease existed as in former years, it is our opinion that the plaintiff is now estopped from ejecting him, particularly in view of the fact that plaintiff has neither paid defendant nor tendered payment to him for his services in preparing the land for the 1940 rice crop. "Where one person, by his words or conduct, has intentionally caused another to act in such a way as to cause him expense or detriment, the former is concluded from averring against the latter and to his prejudice, a different state of facts." Federal Land Bank of New Orleans v. Sanders, La.App., 167 So. 140, 141.

For these reasons assigned, the judgment appealed from is affirmed.