FRUGÉ, Judge.
This is an appeal by Lawrence J. Habetz, who was evicted by order of the district court from a 280-acre tract owned by Felicitas Habetz Cramer.
On appeal, defendant, Lawrence J. Habetz, argues that the lower court erred in its decision because the lease in question was rcconducted under Article 2688, or in the alternative, plaintiff should be equitably estopped from evicting him from the leased tract of land.
The land in question was originally owned by Gertrude Victoria Habetz Schneider, who died July 16, 1965. By tes *279 tament the property was bequeathed to Mrs. Cramer, sister of the testatrix. Judgment of possession in the Succession of Gertrude Schneider was signed on January 24, 1966.
The record reveals that since 1957 the defendant had farmed the land under a verbal lease from Mrs. Schneider growing rice and paying as rent fifteen percent of the rice crop harvested. There was never a written lease between Mrs. Schneider and defendant, and as the record indicates, no understanding as to any terms of the lease concerning its date of commencement or expiration.
After the death of Mrs. Schneider, defendant learned that the land in question had been bequeathed to plaintiff, and being concerned about the change of ownership, •called on plaintiff asking her “consideration” that he be allowed to continue farming the land as he had done for Mrs. Schneider.
What was actually said at this meeting between plaintiff and defendant is in some •dispute. Plaintiff, Mrs. Cramer, testified that she told the defendant that she did not know about the farming business and since •the succession was not settled at that time, for defendant to come back by December 1st and at that time they could “talk turkey.” The defendant denied that he was "told to come back and “talk turkey” and testified that he was led to believe that he could continue on the land as before. At .any rate, defendant did not return and on October 29, 1965, or thereabout, he commenced the fall plowing in anticipation of the spring planting.
Rev. Father Leonard Habetz was appointed and qualified as executor of the •estate of Mrs. Schneider. He was approached by defendant, who inquired about h.is future use of the land. Father Habetz testified he told defendant to do nothing -until he reached an agreement with Mrs. Cramer, the new owner of the land, and at such a time to reduce the agreement or lease to writing. Defendant testified that Father Habetz told him “not to worry” and this, he said led him to believe that all would be well.
Mrs. Cramer sent a letter to defendant on November 27, 1965, ordering him to vacate the premises. The defendant did not comply, and this suit was filed on January 28, 1966.
Plaintiff contends that the lease agreement between Mrs. Schneider, the decedent, and defendant was on a year-to-year basis, the year beginning January 1st and ending on December 31st. The defendant contends that the term of the agricultural farm lease was on a seasonal basis, the termination of one lease year being the date the rice crop was cut and harvested, and the new lease year beginning when he re-plowed the land in the fall in preparation for the spring planting. The 1965 rice crop grown on the disputed land was cut and harvested September 9, 1965, and the re-plowing was completed on or about October 29, 1965.
Defendant contends that since he was allowed to possess the predial estate for one month after the expiration of the verbal lease without the lessor taking any steps to cause him, the defendant, to deliver up the possession of the estate, then there was a reconduction of the lease for another year as provided by LSA-C.C. Art. 2688.
“If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by a new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease.”
In order for defendant to prevail under LSA-C.C. Art. 2688, it was necessary that he prove that it was the custom in his agricultural area that an agricultural lease ran from the fall replowing to the fall harvest. The lower court heard the testimony of *280 four farmers in that agricultural area, and three testified that leases ran from January 1st to December 31st. One testified that riceland leases run from the fall replowing to the harvest. The lower court found for the plaintiff, basing its decision on the opinion of the three witnesses who testified that leases run on a calendar year basis, and further, that since rice crops are harvested at various times during the year, to hold that an agricultural lease terminated at harvest would be “too indefinite.” The lower court concluded that, “A lessor might not gain knowledge of the rice being cut until more than a month after the cutting, and in this situation he could be precluded from canceling a lease because the lessee would have possession of the estate for a month without any steps having been taken.”
Our learned colleague below was obviously impressed with the difficulties which would result due to the indefinite harvesting schedule or timetable if a yearly lease terminated on the date the rice was cut. Being the original trier of facts, he is in the better position to evaluate the testimony of custom in that agricultural area and conclude that leases for ricelands in that vicinity were made on a calendar year basis, that is, from January 1st to December 31st.
Counsel for defendant cites as authority for his contention the case of the First National Bank of Crowley v. Andrus, La.App. 1 Cir., 195 So. 854. We must agree with our learned brother in the lower court that that case is distinguishable from the instant controversy in several ways. In the first place, in the First National Bank of Crowley case there was an agreement between the parties that the lease was to terminate on December 1st or as soon as the crops would be harvested and removed. No such agreement existed in the case at bar. It was the custom between the parties that the plaintiff would instruct the defendant to prepare such portions of the land by summer and fall plowing. No such instructions were ever given by the deceased, Mrs.. Schneider, or Mrs. Cramer. The court concluded in the Bank case that, “The defendant has abundantly proven, not only that it was the custom between himself and plaintiff, but that it is the prevailing custom in his neighborhood that when the tenant does summer and fall plowing for the ensuing year the land is considered leased to-the tenant for the ensuing year.” In the-Bank case the court observed that it was the custom in the area that when there was summer and fall plowing the land was considered leased to the tenant for the ensuing year. In the instant case the plaintiff, by the preponderance of the evidence, showed that this was not the present custom in her agricultural area.
Therefore, it is our belief that since-the custom is that rice leases in that vicinity where this controversy arose are on a calendar year basis, the notice received by defendant on November 27, 1965, that a new lease would not be granted for 1966, further that defendant was notified in writing to vacate the property on or before January 1, 1966, and this eviction suit being filed on January 28, 1966, or within one month after the termination of the lease of the predial estate, there was not a re-conduction of the lease. Article 2688 clearly states that reconduction will not take place where there are adequate steps taken, either by the lessor or the new lessee, to cause the party in possession of the estate to deliver same.
Defendant’s alternate contention is that plaintiff should be equitably estopped from evicting him. In order for a landowner to be equitably estopped from evicting a tenant, said landlord must by word or conduct cause the land tenant to believe that he will be given a new lease, and due to this belief, said tenant acts in such a way that causes him expense and detriment. See Federal Land Bank of New Orleans v. Sanders, La.App. 1 Cir., 167 So. 140.
*281 The record does not contain reasonable proof that either Mrs. Cramer or Father Habetz ever intentionally led defendant to believe that he would be allowed to continue working the rice farm as he "had done during the life of the decedent, Mrs. Schneider. Without proof that he was intentionally led to believe that he would be given the 1966 lease, the shield of equitable estoppel is unavailable to him.
For the reasons assigned, the judgment appealed from is affirmed; costs of this appeal to be borne by the defendant-appellant.
Affirmed.