DOMENGEAUX, Judge.
The only question presented on appeal in this case is whether plaintiff, James Collier, is entitled to lease property in Natchitoches Parish for the crop years 1978 and 1979.
D. F. Foster and Jim L. Knotts, two of four named defendants in the present suit, own approximately 800 acres in Natchitoch-es Parish, known as the “Walker Place” or “Island Plantation.” In April of 1977, they contacted plaintiff, James Collier, in order to enter into a predial lease arrangement for their property. An oral lease was entered into at this time, and plaintiff commenced soybean farming operations.
Subsequently, Knotts and Foster took actions to sell the land. Pursuant to this goal, they signed a buy and sell agreement for the land with Mr. Richard W. Phillips, Sr., on September 1, 1977.
Around this time, Collier became apprehensive with regard to whether he would be able to farm the property for the years 1978 and 1979. He approached Mr. Foster with a written lease which provided for a term of three calendar years, beginning April 12, 1977, and ending on April 11, 1980. This lease also attempted to confirm the oral lease arrangement entered into between Collier and the owners, Foster and Knotts, on April 12, 1977.
Shortly thereafter, in October of 1977, Mr. Phillips’ son, Richard W. Phillips, II, sent a letter to Collier wherein he represented himself as owner of the land. The letters stated that he had bought out his father’s interest in the property, and informed plaintiff that he would be farming the land himself for the crop year 1978. The letter also said that some equipment was going to be moved onto the property immediately.
On November 2, 1977, plaintiff filed suit against the owners, Foster and Knotts, and Richard Phillips, Sr., and his son, Richard Phillips, II, for injunctive relief and damages. Answers and reconventional demands were filed by both sets of defendants, Foster and Knotts, and Phillips and Phillips, II.
The trial judge granted a preliminary injunction against Phillips, II, restraining him from disturbing plaintiff in his possession of the leased land. After a full hearing, the trial judge made the injunction against the younger Phillips permanent; declared that there existed a three-year agricultural crop lease for the calendar years 1977,1978 and 1979 on the property in favor of plaintiff; ordered plaintiff to deliver one-fourth of the crop production to Foster and Knotts, pay the sum of $9,500.00 to Foster and Knotts for the equity and rental value of farm equipment, and complete the assumption of notes for an International Harvester tractor and disc, all pursuant to the lease arrangement; rejected the claim for damages against Foster and Knotts made by Phillips; and rejected all of the claims for damages and attorney’s fees.
*1138 From this judgment, the owner-defendants, Foster and Knotts, appealed devolu-tively, contending that the trial judge was in error by finding that Collier had the right to lease the property for 1978 and 1979.[1]
The trial judge rendered oral reasons in support of his judgment, which were transcribed into the record. An analysis of his reasons reveals that under his construction of the evidence, he found plaintiff entitled to lease the property through 1979 on an estoppel theory.
There are several cases in Louisiana discussing estoppel in the context of lease arrangements. Thomas v. Stuart, 222 So.2d 615 (La.App. 2nd Cir. 1969); Cramer v. Habetz, 189 So.2d 278 (La.App. 3rd Cir. 1966); Federal Land Bank of New Orleans v. Sanders, 167 So. 140 (La.App. 1st Cir. 1936). We feel that the case of First National Bank of Crowley v. Andrus, 195 So. 854 (La.App. 1st Cir. 1940) is most instructive in the present situation.
That case involved an eviction proceeding brought by a landlord against a tenant in the context of an agricultural lease arrangement. The tenant had planted a rice crop pursuant to an oral lease for the crop year 1939, which was scheduled to terminate December 1, 1939, or when the crops were harvested, whichever was later. The crops were harvested by November 3, 1939, and the landlord had knowledge that the harvesting was completed. However, the landlord did not advise the tenant that he would not be able to farm the land for 1940 until December 8, 1939. Additionally, the evidence indicated that the tenant had begun making preparations on the land for the 1940 crop both before and after November 3, 1939.
The Court found that the tenant was entitled to farm the land for the 1940 crop year, despite the notice to vacate given by the landlord stating:
“We are of the opinion that there existed a tacit or implied contract of lease between the parties for the 1940 crop year. Even if such were not the case, since it is clear from the evidence that the defendant was led to believe, in good faith, that such a tacit or implied contract of lease existed as in former years, it is our opinion that the plaintiff is now es-topped from ejecting him, particularly in view of the fact that plaintiff has neither paid defendant nor tendered payment to him for his services in preparing the land for the 1940 rice crop. ‘Where one person, by his words or conduct, has intentionally caused another to act in such a way as to cause him expense or detriment, the former is concluded from averring against the latter and to his prejudice, a different state of facts.’ Federal Land Bank of New Orleans v. Sanders, [supra ].”
195 So. 854, 856.
Turning to the instant case, we feel that there was sufficient evidence in the record to support the trial court’s judgment.
Collier testified that in every conversation he had with Foster or Knotts he was told not to concern himself with whether he would be able to farm the land for 1978 and 1979, because, regardless of what happened, he would be permitted to do so.
Plaintiff stated specifically that when the original discussion took place in April of 1977 between himself and Messrs. Foster and Knotts, he was asked by Knotts if he would be interested in assuming the notes on an International Harvester tractor. Plaintiff said that he had informed Knotts that he could not assume the note with merely a one-year crop lease, whereupon Knotts, according to plaintiff, said that further arrangements could be made.
Plaintiff also testified that in August of 1977, Foster came to his home and discussed the provisions for payment of the tractor. Plaintiff stated that he agreed to pay the $5,000.00 equity in the tractor and to assume the balance of the note, as long as he would be able to farm the land for more than one year. Plaintiff said that Foster told him at that time that he would be *1139 permitted to farm the land until the tractor was paid in full. This was substantiated by the testimony of Shirley Collier, plaintiff’s wife, who heard the conversation.
Plaintiff further testified that he attempted to get a written lease signed in September and October of 1977, in order to confirm the three-year oral lease. Plaintiff said that when the written lease was delivered to Foster, Foster said he would probably sign the lease after his attorney reviewed it. Plaintiff stated that he spoke with Foster a few days later and that Foster told him not to worry because the lease would be signed.
Finally, plaintiff testified that at the time the crop was being harvested in the fall of 1977, he was preparing the land for the crop year 1978. Plaintiff explained that these preparations consisted of discing the stubbles left after harvesting. He also stated that both Foster and Knotts were aware of his preparations for next year’s crop and that neither expressed any objections to this preparation.
We feel that the above evidence is sufficient to sustain the trial court’s finding. Even though the testimony of Foster and Knotts and their witnesses contradict some of plaintiff’s testimony, we can find no manifest error in the trial court’s evaluation. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
If, then, plaintiff’s testimony is accepted on its face, it is clear that he was led into believing that he would be able to farm the land for 1978 and 1979. It is also clear that plaintiff acted to his detriment insofar as the land was being prepared for the following crop year at the time of harvest. Considered in this light, the instant case bears striking similarity to First National Bank of Crowley v. Andrus, supra, and, accordingly, we affirm.
For the above reasons, the judgment of the District Court is affirmed at the cost of defendants-appellants, D. F. Foster and Jim L. Knotts.

AFFIRMED.

GUIDRY, J., concurs in the result.

. Phillips, Sr. and Phillips, II are not involved in this appeal.