HOOD, Judge.
Plaintiff, Bernard E. Regan, seeks damages for the alleged breach of a lease contract and for wrongful eviction from the leased property. The defendant, Bernard E. Carr, reconvened for damages, alleging breach of contract by Regan. Judgment was rendered by the trial court in favor of plaintiff Regan, awarding him damages for breach of contract and dismissing defendant’s reconventional demand. Defendant Carr appealed. Plaintiff answered the appeal seeking an increase in the amount of the award.
The issues presented are whether a tacit reconduction of the lease occurred, and, if so, whether Regan is entitled to recover damages for wrongful eviction.
Prior to April 15, 1974, defendant Carr owned three tracts of farm land in Acadia Parish, comprising a total of 112.17 acres. He acquired ownership of that property by inheritance from his father in 1964. The property was leased to plaintiff Regan each year from 1950 through 1973, and Regan farmed rice and soybeans on it every crop season during that time. Originally, Regan entered into a verbal agreement with Carr’s father to lease the property for one year, and the lease was tacitly reconducted or orally renewed annually for a number of years thereafter. Both parties agree that the terms of the leases were from January 1 to December 31 of each year. The last year Regan actually farmed the property was during the year 1973.
Defendant Carr lives in Illinois. While he owned the above property, however, he visited the area where it was located regu *1127 larly in the fall or winter of each year, and usually he saw Regan on each of those trips.
Carr decided to sell his farm property during the latter part of 1973, and he thereupon listed it for sale with Bill Hoffpauir, a local real estate broker. At about 10:00 A.M., on December 3,1973, Carr met Regan at the latter’s rice dryer in Louisiana and informed him that he was going to sell the property and that he had listed it with Hoffpauir. At about 2:00 P.M. that same day, December 3, a written agreement was entered into between Carr, Hoffpauir and Thomas B. Freeland, under the terms of which Freeland agreed to purchase the property from Carr for a stipulated price. The agreement provided, however, that the sale was conditioned on the ability of the purchaser to secure adequate financing, and that the contract would be null and void on December 31, 1973, if the purchaser failed to obtain a loan by that date. The sale was not completed by December 31, 1973.
On January 15, 1974, another buy-sell agreement was entered into by Carr and Freeland, under the terms of which Free-land agreed to buy for about the same price what we assume to be the same property, although it is described somewhat differently and is shown to contain a greater number of acres than is shown in the original agreement. That contract also was com ditioned on the purchaser’s ability to borrow a substantial sum of money on or before January 31, 1974. The property was sold about three months later pursuant to that agreement. Carr executed a deed conveying the property to Freeland on April 15, 1974. Freeland took possession of the property on or shortly after that date, and he farmed it during the 1974 crop season.
This suit was instituted on March 26, 1975. The trial judge found that there had been a tacit reconduction of the lease for the year 1974, and that Regan was evicted from the leased premises “in April of 1974, much more than one month after the expiration of the previous lease.” He thus rendered judgment in favor of plaintiff awarding him damages for breach of the lease contract.
The principal issue to be determined is whether a tacit reconduction of the 1973 predial lease occurred.
The applicable law is set out in Article 2688 of the Louisiana Civil Code, which provides:
“If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by a new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease.”
With reference to LSA-C.C. art. 2688, our Supreme Court said in Ashton Realty Company v. Prowell, 165 La. 328, 115 So. 579 (1928):
“The meaning of that article is simply this: That, if both parties to the lease remain silent and inactive for the space of one month after the expiration of the lease, they shall both be presumed to have acquiesced in, and tacitly consented to, a renewal of the lease for another year. It has no application whatever when either party has clearly announced his intention not to renew the lease on the same terms or for a full year, for the purpose of the law is not to force a contract upon parties unwilling to contract, but merely to establish a rule of evidence, or presumption, as to their intention in the premises.”
The above rule has been applied repeatedly by courts in this state. See Eames v. Goodwin, 337 So.2d 909 (La.App. 3 Cir. 1976); Scanlan v. Haristy, 316 So.2d 841 (La.App. 3 Cir. 1975); Prisock v. Boyd, 199 So.2d 373 (La.App. 2 Cir. 1967); Dinkins v. Broussard, 190 So.2d 496 (La.App. 1 Cir. 1966); Cramer v. Habetz, 189 So.2d 278 (La.App. 3 Cir. 1966).
We have examined the facts in the instant suit with the above rules in mind.
*1128 Carr testified that he tried to contact Regan on December 4, 1973, to inform him that on the preceding day he had entered into an agreement to sell the property to Freeland, but he stated that he was unable to get in touch with Regan. He concedes that he did not inform Regan personally at any time that he had agreed to sell the property to Freeland. He did not tell him after the sale was completed that the property had been sold, and he did not tell Regan at any time that he could not farm that land during the year 1974. He testified that he never notified Regan to vacate the property, and that no one else in his presence ever ordered Regan to vacate the leased premises.
Hoffpauir testified initially that he talked to Regan about a week after December 3, 1973, and told him at that time that Freeland “was going to buy the property and was going to farm it.” Later in his testimony, however, he stated that “the only thing” he told Regan on that occasion was that he “thought Mr. Carr was going to sell the property to Mr. Freeland and that they had an agreement to sell the property.” Hoffpauir further testified that he “never, at any time on behalf of Mr. Carr, notified Mr. Regan to vacate the property.”
Thomas B. Freeland testified that “later on in the winter,” after he had agreed to purchase the property, he talked to Regan “about whether he was going to be able to plant the crop in ’74,” and he told Regan at that time that he (Freeland) intended to plant it. He did not remember the date on which that conversation took place, but he concedes that it could have been in the latter part of February, 1974. Freeland testified that he did not notify Regan to vacate the premises at any time, because he felt that he had no authority to do so “until after the sale was actually passed.” We have already noted that the sale was completed on April 15, 1974.
Regan testified that after he harvested his 1973 crop, he began preparing the above property for his 1974 crop by constructing levees and drains on at least a part of it. He completed that work by the end of December, 1973. He stated that he intended to farm the property during the year 1974, but that he did not actually do any work on the property during that year.
Regan’s testimony is that no one ever told him to vacate the premises before the property was actually sold to Freeland on April 15,1974. He said that Hoffpauir told him a few days after December 3, 1973, that Carr had given Freeland an “option” to buy the property, and he admits that Freeland told him in 1974, before the crop season began that year, that he (Freeland) planned to buy the property and was going to farm it. Regan stated, however, that immediately after he received that information from Freeland he contacted his own attorney, and that his attorney promptly wrote to Carr’s attorney advising that Re-gan had started preparing the land for farming during the 1974 crop season, and that Regan was entitled to be maintained in peaceable possession of the property that year. Regan’s attorney suggested in that letter that an effort be made to work out an agreement whereby Freeland would allow Regan to continue farming that year. The above letter was written by Regan’s attorney on February 25, 1974.
The evidence convinces us that- Regan contacted his attorney immediately after Freeland informed him that the latter intended to buy and to farm the property in 1974, and that the above letter was written on the day Regan saw his attorney. We find that it was on or about February 25, 1974, that Freeland first informed plaintiff that Freeland intended to farm the property during the 1974 crop season.
We have determined that the lease held by Regan in 1973 extended over that full calendar year, beginning on January 1 and ending on December 31 of that year. The one month period provided in LSA-C.C. art. 2688 expired on January 31, 1974.
We find, as did the trial judge, that plaintiff Regan continued to possess the leased property from December 31, 1973, until about April 15, 1974, a period of considerably more than the one month provided in Article 2688 of the Civil Code. We think *1129 plaintiff was effectively evicted from that property on or about the last mentioned date, however, by the act of the new owner, Freeland, in taking possession of the land and beginning farming operations on it.
Defendant’s primary argument, as we understand it, is that before the term of the 1973 lease expired the owner, Carr, clearly announced his intention not to renew that lease, and that under those circumstances a reconduction of the lease could not and did not take place. To support that argument, he points out (1) that Carr told Regan on December 3,1973, that he was going to sell the property, (2) that a buy-sell agreement was entered into with Freeland on that date, (3) that Regan learned of the proposed sale a few days after the agreement was signed, (4) that Freeland confirmed the fact that such an agreement had been signed when he talked to Regan on February 25, 1974, and (5) that Regan did not conduct any farming operations on the property in 1974.
We have decided that the information which Carr gave to Regan on the morning of December 3, 1973, did not constitute a clear announcement by Carr of his intention not to renew the lease for another year. Carr told Regan at that time simply that he was going to sell the property and that he had listed it with Hoffpauir. The evidence shows that Carr had talked about selling the property for years. Regan, in fact, had made offers to Carr for the purchase of at least parts of it. Hoffpauir testified that Carr had asked him for several years to try to sell the property, and that on this occasion “it finally came to a point where we did sell it.” Carr, himself, after conceding that he had talked to Regan on prior occasions about selling the property, explained that when he saw plaintiff on December 3, 1973, he told him that he “had really decided to sell it” at that time. That indicates to us that Carr had not really tried to sell it on prior occasions, and that there was no reason to think that he was any more sincere on the last mentioned date. The fact that Carr told Regan one more time, on December 3, 1973, that he was going to sell it, certainly did not constitute a clear announcement that the lease would not be renewed for 1974.
Our conclusion is that when Carr talked to Regan on December 3, 1973, he did not tell plaintiff, or even imply, that the latter’s farming lease would not be reconducted or renewed for the year 1974. Prior to the expiration of the terms of the 1973 lease, therefore, Carr did not clearly announce his intention not to renew the lease. And, neither did he take a step to cause Regan to deliver up possession of the estate at any time prior to January 31,1974, that is, prior to the expiration of the one month period provided in LSA-C.C. art. 2688.
The execution of a buy-sell agreement by Carr and Freeland on December 3,1973, the signing of another such agreement on January 15, 1974, and the information which Hoffpauir gave to Regan about the first such agreement in December, also did not constitute a notice of Carr’s intention not to renew the lease for the year 1974. In the first place, there is no showing that Hoff-pauir had authority to give such a notice in behalf of Carr. But even if he did have that authority, Hoffpauir did not say, or even intimate, that plaintiff’s farming lease would not be renewed for another year, as had been done routinely every crop season for 23 years.
Hoffpauir, in fact, made it clear that he did not tell Regan that he would have to vacate the premises. Regan unquestionably understood from his conversation with Hoffpauir that Carr still owned the land as of that time and that the property had not been sold. His understanding of the transaction was that Carr had granted an “option” to Freeland. Neither Carr nor Hoff-pauir indicated to Regan when the sale might be completed, and neither of them suggested that such a sale would prevent Regan from farming the property in 1974. If any such suggestion had been made, we think there likely would have been some further discussion as to whether the purchaser would benefit from the work and *1130 expense which Regan had devoted to the 1974 crop.
Our conclusion is that the facts which Hoffpauir gave to Regan in December, 1973, considered alone or with all .of the other information which Regan had obtained from other sources, was not sufficient to constitute an announcement by Carr that the latter did not intend to renew Regan’s farming lease for the year 1974.
It is immaterial that Regan was informed by Freeland on February 25, 1974, that the latter planned to farm the property in 1974. The conversation between Re-gan and Freeland took place after a recon-duction of the lease had occurred, so any information which Freeland gave plaintiff at that time came too late to constitute a clear announcement by or on behalf of Carr that the latter did not intend to renew the 1973 lease for another year.
We agree with the apparent conclusion reached by the trial court that Regan continued to possess the property for one month after the term of the 1973 lease expired, without any step having been taken by the owner-lessor to cause him to deliver up possession of the property, and that prior to the expiration of the 1973 lease neither party clearly announced his intention not to renew the lease for the year 1974. A tacit reconduction of the lease thus occurred on January 31, 1974. Regan had the right to conduct farming operations on the premises during the year 1974, and he was wrongfully evicted from that property in April of that year.
LSA-R.S. 9:3203 provides that the lessor of property to be cultivated who fails to permit the lessee to occupy or cultivate the leased property, is liable to the lessee in an amount “equal to the market value of the average crop that could have been grown on the land or on like land located in the immediate vicinity.”
In this suit, the evidence shows that in 1974 plaintiff intended to plant 38.4 acres in rice and 35 acres in soybeans. A farmer’s average profit from farming operations that year would have been $125.00 per acre for rice, and $75.00 per acre for soybeans. The trial judge computed plaintiff’s loss for both crops to be $7,485.00, and he rendered judgment in favor of plaintiff for that amount. We think the evidence supports the award made by the trial court as damages for the breach of contract.
Plaintiff also seeks damages for embarrassment and mental distress resulting from his eviction from the leased premises. He argues that the trial court erred in rejecting his claim for damages for wrongful eviction, and he demands in his answer to the appeal that the judgment be amended by increasing the award to include such damages.
The evidence fails to show that plaintiff sustained any damages at all, other than the loss of his crop, as a result of his eviction from the leased premises. We thus find no error in the conclusion reached by the trial court that plaintiff is not entitled to the additional damages claimed for the wrongful eviction.
Having concluded that the evidence fails to establish that plaintiff sustained any damages resulting from the wrongful eviction, it is unnecessary for us to consider defendant’s argument that Regan’s claim for that item of damages has prescribed.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.