628 So.2d 1191 (1993)
STATE of Louisiana, DOTD, Plaintiff/Appellee,
v.
Alicia Vidrine MOREIN, Defendant, and
Gloria Ardoin Freeman, Defendant/Appellant.
No. 93-156.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*1192 James J. Adams, Lafayette, State Dept. of Transp.
John Blake Deshotels, Ville Platte, for Alicia Vidrine Morein, et al.
Before DOMENGEAUX, C.J., and STOKER and THIBODEAUX, JJ.
DOMENGEAUX, Chief Judge.
This case concerns the amount of compensation, if any, owed to a lessee for loss of business profits allegedly caused by the expropriation of property for the widening of two state highways. In ruling on summary judgment filed by the State, the trial court dismissed the suit after fixing the lessee's compensation at $670.00. The lessee appeals.
On December 1, 1989, the State of Louisiana, DOTD, filed this expropriation proceeding in connection with the widening of Louisiana Highways 167 and 10. The expropriated property included a strip of land in Evangeline Parish that was owned by Alicia Morein and leased to Gloria Freeman, who operated a business known as "Gloria's Faststop." The lease between Morein and Freeman was in effect from May 1, 1989 through April 30, 1991. The lease also granted Freeman the option to lease the property for an additional five years, through April 30, 1996. This expropriation proceeding was filed during the primary term of the lease, but construction on the project began during the five-year option period. In an affidavit introduced by the State on summary judgment, Freeman stated that her business did not sustain any economic damages before construction began.
On October 27, 1992, DOTD filed a motion in limine, in which it sought, inter alia, to prevent Freeman from introducing any evidence at trial regarding economic losses that her business may have sustained after April 30, 1991, when the primary term of the lease expired. The trial court granted the motion, signing a judgment to that effect on November 4, 1992. The next day, the trial court granted summary judgment in favor of DOTD, fixing Freeman's compensation at $670.00, that amount being based upon the affidavit of DOTD's expert.
LSA-Const. Art. 1, § 4 provides in part:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
* * * * * *
In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss.
* * * * * *
A lessee's business losses, if proved to have been caused by the State's taking or damaging of property, are compensable under the "full extent of his loss" measure of recovery. State through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979); State, DOTD v. Exxon Corp., 430 So.2d 1191 (La. App. 1st Cir.), writ denied, 437 So.2d 1155, 1156 (La.1983).
A lessee's right to compensation depends upon the existence of a lease, and awards for lost profits beyond the term of the lease have been denied as speculative. State, DOTD v. Manuel, 451 So.2d 659 (La. *1193 App. 3d Cir.1984); Holland v. State, DOTD, 554 So.2d 727 (La.App. 2d Cir.1989), writ denied, 559 So.2d 125 (La.1990); Naquin v. State, DOTD, 604 So.2d 62 (La.App. 1st Cir.), writ denied, 608 So.2d 169 (La.1992). However, two cases, more fully discussed below, have permitted a lessee to recover lost profits that were sustained during several verbal, short term extensions of a written lease. See Exxon, supra; and Packard's Western Store v. State, DOTD, 618 So.2d 1166 (La. App. 2d Cir.1993).
The Exxon case is factually similar to the instant case in that the expropriation proceeding was filed during the existence of a one-year lease but construction on the project did not begin until after that lease had expired. The lease in Exxon apparently did not have an option provision, and upon termination of the lease, the parties agreed to several verbal extensions, continuing until the lessee finally closed her business. Although the trial court awarded the lessee damages only through the expiration of the original lease, the appellate court reversed and permitted the lessee to recover lost profits through the end of the last verbal extension.
In Packard's, the lessor and lessee had a long-standing business relationship which usually involved successive leases with three- or four-year terms. Upon hearing of an impending expropriation, the lessee declined an offer to extend its current lease for three years, and the parties then entered into several six month extensions until the lessee decided to close the business. In permitting the lessee to recover lost profits not only through the end of the last extension, but through the three-year offer that the lessee had declined, the court stated:
While it is true that a business lessee's right to possess the property depends on the existence of a lease, where the landowner's does not, we decline to say that a lessee may never recover business losses beyond the expiration of the lease term, particularly when, as here, the impending expropriation is found to be the sole reason for shortening what would otherwise have been a longer lease term in a well-established and mutually satisfactory lessor-lessee relationship.
* * * * * *
On this record, and in light of the principles allowing recovery of business losses shown to have been caused by the State's taking or damaging of property, discussed and cited above, we find no error in the jury charge that Packard's could recover business losses after the expiration of its lease upon proof by a preponderance of the evidence that Packard's had an option or reasonable expectation that its lease would have been renewed for some reasonable time period. (Emphasis added.)
618 So.2d, pp. 1173, 1174.
See also Holland, supra, which affirmed the denial of a claim for business losses after a lease expired "because Holland had no option or guarantee that his lease would have been renewed." 554 So.2d, at p. 732.
We find the instant case is analogous to the facts presented in Exxon. Whether the lessee remained in possession of the premises through an extension of his lease or through the exercise of an option provided in the lease is immaterial to the question of the lessee's claim for loss of business profits. In both situations, the lessee entered into a legal relationship with a finite term. That term provides an indication as to the length of time the parties reasonably expected to remain in business. At trial, a question may arise as to whether the lessee exercised its option in good faith. See Holland, supra, at p. 732. However, that question is beyond the scope of the record before us at this time. For these reasons, we find the trial court erred in preventing Freeman from introducing evidence of business losses beyond the expiration of the primary term of her lease, when Freeman has shown that the lease contained an option for its renewal and that she was conducting business operations during the option period.
We now turn to the other issue raised by the State in its motion in limine. The *1194 trial court's ruling on this motion prevented Freeman from introducing evidence of business losses as the result of loss of access to the highways, loss of parking spaces due to the construction of barriers and curbs, loss of the use of DOTD's right of way and inconvenience caused by diverting traffic during construction. The ruling also contained a finding that Freeman's business was not a going concern.
In Exxon, the lessee was permitted to recover for loss of business profits upon showing that two of four access driveways to her service station were permanently closed. In State, DOTD v. Sheridan, 517 So.2d 415 (La.App. 1st Cir.1987), the lessee's service station lost two of four access driveways as the result of curbing, and the loss of access further resulted in drastic changes in the physical layout of the business. But see Dickie's Sportsman's Centers, Inc. v. DOTD, 477 So.2d 744 (La.App. 1st Cir.), writ denied, 478 So.2d 530 (La.1985), where the corporate owner of a business was denied recovery because it could not prove that DOTD "substantially interfered" with its right of access. See also Constance v. State, DOTD, 615 So.2d 365 (La.App. 5th Cir.), reversed October 28, 1993.
In the instant case the record does not reveal what impact the expropriation and construction has had upon the leased premises. We do not know what portion of the leased premises was expropriated, whether or not the expropriation was limited to property previously subjected to DOTD's right of way, whether and to what extent access to the leased premises has been impaired, and what if any changes have been made to the remainder of the leased premises. The ruling of the trial court granting in toto the State's motion in limine unduly restricted the lessee's right to present evidence on relevant issues. That ruling is hereby reversed.
For the above reasons, the judgments of the trial court granting the State's motion in limine and motion for summary judgment are reversed. Costs of this appeal are assessed to plaintiff-appellee, DOTD, to the extent allowed by law. The case is remanded for further proceedings not inconsistent with the views expressed herein.
REVERSED AND REMANDED.