704 So.2d 1211 (1997)
Daniel L. WEBB and Thomas B. Baggett, III, Plaintiffs-Appellants,
v.
Francis O. THERIOT, Defendant-Appellee.
No. 97-624.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
Rehearing Denied February 25, 1998.
*1212 Van Clifton Seneca, Lake Charles, for Daniel L. Webb and Thomas B. Baggett III.
Michael H. Schwartzberg, Lake Charles, for Francis O. Theriot.
Before WOODARD, SULLIVAN and PICKETT, JJ.
PICKETT, Judge.
Plaintiffs, Daniel L. Webb and Thomas B. Baggett, III, appeal a judgment of the trial court finding that defendant, F.O. Theriot, was not liable for breach of lease. For the following reasons, we affirm.

FACTS
This matter arises from a lease executed between Thomas B. Baggett, III and F.O. Theriot. On May 27, 1985, Dr. Baggett and Mr. Theriot signed a lease granting Dr. Baggett all the hunting, fishing and trapping rights to certain immovable property located in Cameron Parish. The lease was for one year and was renewable on a yearly basis for ten years. Dr. Baggett was to pay Mr. Theriot $6,000.00 per year for the land and a camp located on the property. Mr. Theriot signed the lease on behalf of himself personally and on behalf of two corporations, Golden Chevrolet, Inc. and Cameron Oil & Gas, Inc. Subsequently, on September 28, 1990, Dr. Baggett and Mr. Theriot signed an agreement to renew lease. This agreement provided that upon expiration of the 1985 lease, an extension of the lease would be executed giving Dr. Baggett the option to renew the lease for another twenty years. After leasing the property in 1985, Dr. Baggett remodeled the camp located on the property.
Soon after leasing the property from Mr. Theriot, Dr. Baggett began subleasing the property to Daniel L. Webb. At first Mr. Webb sublet only a portion of the property leased by Dr. Baggett. However, by 1988, Mr. Webb was subleasing all of the property, including the camp. As consideration for the sublease, Mr. Webb paid Dr. Baggett $5,000.00 in cash and furnished him with two new demonstrator vehicles[1] at no cost. It was agreed that Dr. Baggett would return the vehicles once the odometers reached approximately 6,000 miles and receive new vehicles. Dr. Baggett's only expenses related to the vehicles were for oil and gasoline. The terms or conditions of the sublease were never reduced to writing. However, Dr. Baggett and Mr. Webb stated that the sublease was on a yearly basis with an annual option. Both men stated the renewal date of the sublease was May 1 of each year. After subleasing the entire area, Mr. Webb also made improvements to the property and camp. The improvements included refurbishing the air-conditioning system and installing fiberglass duck blinds. Also, Mr. Webb and Dr. Baggett shared the cost of installing a water well on the leased property.
During the 1993-1994 hunting season, Mr. Webb complained to Mr. Baggett several times regarding Mr. Theriot's alleged abusive conduct and outrageous behavior. Following the 1993-1994 sublease term, Mr. Webb did not renew his sublease with Dr. Baggett on May 1, 1994. Thereafter, Mr. Webb sent one of his employees, Mark Jeane, his son, and nephew to remove his personal property from the leased premises. However, they were prevented from removing any property by Mr. Theriot. On or about July 13, 1994, Mr. Webb wrote to Dr. Baggett complaining of Mr. Theriot's conduct. Mr. Webb gave notice in the letter of his intention to give up the lease. Mr. Webb also indicated that he would like to discuss damages with Dr. Baggett. Mr. Theriot, via a letter dated August 4, 1994, was informed by an attorney retained by Mr. Webb and Dr. Baggett that they felt that he had breached the lease and Dr. Baggett was not going to exercise the August 15, 1994 renewal option.
On August 10, 1994, Dr. Baggett and Mr. Webb filed a petition for damages and breach *1213 of lease naming Mr. Theriot as the defendant. In the petition Dr. Baggett claimed damages for loss of profits, prorated value of lost improvements and loss of stolen property. Mr. Webb claimed damages for prorated loss of improvements, loss of stolen property, lost expenses and emotional distress. Mr. Webb bases his claim for emotional distress upon the alleged threats, poaching and verbal abuse of Mr. Theriot. The matter was originally assigned to the Honorable H. Ward Fontenot, who ordered Mr. Theriot to return Mr. Webb's and Dr. Baggett's property. However, the property was not returned.
The case was tried before the Honorable Arthur Planchard on November 14-15, 1996. The trial court concluded that because Mr. Webb and Dr. Baggett were not prevented from hunting or using the camp, Mr. Theriot did not breach the lease. Based upon this conclusion, the trial court did not award Dr. Baggett damages for lost profits or for the loss of his investment in improving the property. The trial court found that Mr. Webb, as a sublessee, had no cause of action to recover damages from Mr. Theriot for his loss of improvements. The trial court found that Mr. Theriot's conduct was abusive and at times outrageous. However, the trial court found that his conduct did not justify an award of damages for emotional distress or mental anguish. The trial court refused to award Mr. Webb and Dr. Baggett attorney fees under the Louisiana Unfair Trade Practices Act, finding it inapplicable to this case. However, the trial court did grant Mr. Webb and Dr. Baggett relief on their claim for stolen property. Mr. Webb was awarded $3,600.00 for the value of his property. Dr. Baggett was awarded $4,575.00 for his property. Mr. Webb was awarded an additional $1,800.00 as reimbursement for attempting to retrieve his property. Mr. Webb and Dr. Baggett now appeal.

OPINION
Plaintiffs argue that the trial court erred in: (1) refusing to award Dr. Baggett anything for his lost profits; (2) refusing to award Dr. Baggett anything for the loss of the improvements to the leased property; (3) refusing to award Mr. Webb anything for his loss of the improvements to the leased property; (4) refusing to award Mr. Webb any damages for emotional distress or mental anguish; and (5) refusing to award Dr. Baggett and Mr. Webb attorney fees under the Louisiana Unfair Trade Practice Act.

I. Damages Claimed by Dr. Baggett
The law is well settled that a lessor is bound to permit the lessee to enjoy the peaceable possession of the premises during the lease. La.Civ.Code art. 2692; T.D. Bickham Corp. v. Hebert, 432 So.2d 228 (La. 1983). "Our jurisprudence has long recognized that a lessor who breaches this obligation by interfering with the lessee's possession is liable for the damage that results." Moity v. Castille, 469 So.2d 503, 506 (La.App. 3 Cir.1985); See also Regan v. Carr, 343 So.2d 1125 (La.App. 3 Cir.), writ denied, 346 So.2d 207 (La.1977). "The determination of whether a breach occurred is a question of fact." McFillen Rent-A-Car, Inc. v. Brierty, 625 So.2d 364, 365 (La.App. 3 Cir.1993).
The trial court concluded that Mr. Theriot did not breach the property lease in this matter. Based upon this conclusion, the trial court did not award any damages for Dr. Baggett's claims for lost profits or for the loss of the improvements to the property.
In its reasons for judgment, the trial court stated: "The testimony in this case did not show that Dr. Baggett would not be allowed to hunt at any time on the property and it does not appear that he attempted to exercise his rights under the original lease. Dr. Baggett still had the right to renew his option for the year 1994-1995 hunting season and beyond but he failed to exercise that right and made no tender to the lessor to renew. If Dr. Baggett had exercised his option to renew under his contract then he would be able to complain of future loss of income but he chose no to do so. If Dr. Baggett is to recover it must be for damages resulting from the tortuous conduct of Mr. Theriot."
The general rule is that "[i]f the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease." La.Civ.Code art. 2696. However, "[a] lessee's right to compensation *1214 depends upon the existence of a lease, and awards for lost profits beyond the term of the lease have been denied as speculative." (Citations omitted.) State, Dept. Of Transp. and Development v. Morein, 628 So.2d 1191, 1192 (La.App. 3 Cir.1993).
In the case at hand, the lease between Dr. Baggett and Mr. Theriot ceased to exist because Dr. Baggett failed to renew the lease. If Dr. Baggett had renewed the lease and been unable to find a suitable sublessee, then we agree that he would have been entitled to seek damages for loss of profits. Furthermore, as noted by the trial court, Dr. Baggett was seldom present on the property and was never denied the opportunity by Mr. Theriot to hunt on the property.
Thus, our review of the record in this case convinces us that there was sufficient evidence before the trial court to support his finding that there was no breach of lease on the part of Mr. Theriot in regard to the lease he signed with Dr. Baggett. Therefore, we find no manifest error in the trial court's refusal to award damages to Dr. Baggett.

II. Damages Claimed by Mr. Webb
In Hebert v. Hines, 615 So.2d 44, 46 (La.App. 3 Cir.1993), we stated:
Louisiana jurisprudence provides that when parties enter into a sublease, a new contract comes into existence which is separate and distinct from the original lease between the owner and the sublessor. There is no privity of contract between the sublessee and the original owner-lessor. The sublessee is not considered as an original lessee and may only exercise rights under the original lease through the original lessee.
(Citations omitted.)
The trial court concluded that Mr. Webb's remedy in contract, if any, would be against Dr. Baggett and any remedy sought against Mr. Theriot would have to be in tort. We share this conclusion. There was no privity of contract between Mr. Webb and Mr. Theriot. Mr. Webb sublet the property and camp from Dr. Baggett. Dr. Baggett, as sublessor, owed a duty to Mr. Webb to possess the property in a peaceful condition during the term of the sublease. Thus, any action by Mr. Webb for breach of lease should have been brought against Dr. Baggett. Accordingly, we find no manifest error in the trial court's finding that Mr. Webb was not entitled to damages from Mr. Theriot for breach of lease.
Mr. Webb was additionally denied relief on his tort claim against Mr. Theriot for negligent and/or intentional infliction of emotional distress.
In order to recover for intentional infliction of emotional distress, a plaintiff must prove that (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205 (La.1991). The conduct of the defendant "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. at 1209. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities will not result in liability. The distress suffered must be of such a nature that no reasonable person could be expected to bear it. Liability will only arise when there is extreme mental suffering or anguish. White, 585 So.2d 1205.
The Louisiana Supreme Court has limited recovery for negligent infliction of emotional distress to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi v. Dept. Of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990).
In denying these claims, the trial court stated: "There was ample evidence to show that the conduct of the defendant was outrageous at times; however, there was no evidence to show that the distress was severe and there was no evidence sufficient to prove that the defendant intended to inflict severe emotional distress. The Court does not feel *1215 that the testimony was sufficient to prove even the negligent infliction of emotional distress."
Applying the precepts stated above to the present case, we come to the same conclusion as the trial court. While we do not condone the behavior of Mr. Theriot, we find that the record does not sufficiently reflect the facts necessary to find him liable for intentional and/or negligent infliction of emotional distress. We believe that Mr. Webb, as any person would, was rightfully bothered by the insults and annoyances of Mr. Theriot. However, we do not believe Mr. Theriot's conduct was of such of an "extreme and outrageous character" to warrant an award for damages. The record fails to show any intent on the part of Mr. Theriot to inflict emotional distress upon Mr. Webb. Furthermore, the record fails to show that any emotional distress suffered by Mr. Webb was extreme. While it is apparent that Mr. Theriot disliked Mr. Webb, his discourteous acts toward him are not tortious.
Therefore, we find no manifest error in the trial court's denial of Mr. Webb's claim for intentional and/or negligent infliction of emotional distress.

III. Plaintiffs Claim for Attorney Fees
Dr. Baggett and Mr. Webb argue that they should have been awarded attorney fees pursuant to the Unfair Trade Practices Act. The trial court denied this claim finding that the act does not apply to this case.
The Louisiana Unfair Trade Practices and Consumer Protection Law is set forth at La.R.S. 51:1401 et seq. La.R.S. 51:1405(A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La.R.S. 51:1409(A) confers a private right of action on "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal," from unfair trade practices. A practice is considered unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers. Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1 Cir.1984).
The law requires the deceptive or unfair act to be one in the course of "trade" or "commerce." La.R.S. 51:1402(9) defines "trade" or "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state."
Applying these statutes to the case at hand, we do not find that the lease and sublease of the hunting property and camp fall within the definition of "trade" or "commerce." Accordingly, we find no error in the trial court's judgment.

DISPOSITION
For the following reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Mr. Webb is the owner of Marler Ford in Prospect, Louisiana.