955 So.2d 214 (2007)
DIXIE SERVICES, L.L.C.
v.
R & B FALCON DRILLING USA, INC.
Nos. 2005-CA-1212, 2006-CA-1209.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2007.
*216 George Pivach, II, Timothy Thriffiley, Pivach, Pivach, Hufft & Thriffiley, L.L.C., Belle Chasse, LA, for Plaintiff/Appellant.
Aldric C. Poirier, Jr., James W. Vitrano, Christopher T. Grace, III, Blue Williams, L.L.P., Metairie, LA, for R & B Falcon Drilling USA, Inc.
Richard J. Tomeny, Jr., Becknell & Tomeny Kenner, LA, for Marine Specialties, Inc.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, SR., and Judge ROLAND L. BELSOME).
DENNIS R. BAGNERIS, SR., Judge.
The issue in this case is whether the Lessees of commercial property located in Plaquemines Parish are liable to Lessor for unpaid rent and damages. In the consolidation of this case, the issue is whether the district court erred considering a Motion to Assess Costs and Fix Attorney Fees. We affirm in part and reverse in part.

Facts and Procedural History
In November 1997, Dixie Services, LLC (hereinafter "Dixie"), as Lessor, and R & B Falcon Drilling USA, Inc. (formerly Falcon Workover Company, Inc. and hereinafter referred to as "Falcon") as Lessee, entered into a lease ("Lease") of real property located at 230 Gunther Lane, Belle Chasse, Louisiana. The Lease had an initial term of five (5) years, commencing on November 15, 1997 and continuing through November 14, 2002. A monthly rental of $6,500.00 was due during the primary term of five years.
The primary term of the Lease automatically renewed for a single, additional five (5) year period, unless Falcon timely elected *217 to not renew the Lease. The terms of any renewal term were to be identical to those contained in the Lease and in place during the initial term, except for an increase in the rents, commensurate with an index for inflation. In order to limit the Lease to its primary term and avoid the single renewal term, Falcon was required to provide written notice of cancellation to Dixie at least one hundred and twenty (120) days prior to the end of the primary term. Specifically, the Lease granted to Lessee, the "... right and privilege of canceling this Lease at the end of the primary term or any renewal period (if applicable) by notifying Lessor in writing by certified mail at least one hundred and twenty (120) days prior to the expiration of the primary term or any renewal period (if applicable)."
Falcon vacated the leased premises in February 1999. Thereafter, on March 29, 1999, Falcon entered into a sublease with Marine Specialties, Inc. ("Marine Specialties") ("Sublease") for the building and parking lot of the leased premises. The Sublease was for a one year term commencing April 1, 1999 and terminating on March 31, 2000 with a rental of $3,740 per month. Dixie acknowledged and accepted the terms of the Sublease including those pertaining to reduced rent and its limited term. Marine Specialties and Falcon executed one renewal to extend the Sublease through November 14, 2002 at an increased rent of $4,000.00 per month. Following expiration of the Sublease, Marine Specialties has continued to occupy the Leased premises on a month-to-month basis. Falcon continued to accept the monthly rental payments from Marine Specialties until Marine Specialties vacated the premises in August 2003. None of the payments were forwarded to Dixie.
Falcon, via certified mail dated July 30, 2002, advised Dixie of its election to cancel the lease. Because this notice was sent less than 120 days prior to the lease's expiration date of November 14, 2002, Dixie informed Falcon that the notice was deficient and that the monthly rental payments should continue for an additional five years or until November 14, 2007. However, Falcon stopped making rental payments at the expiration of the initial term and Dixie notified Falcon that they were in default of the lease on November 15, 2002. The building has remained vacant since Marine Specialties moved out in August 2003.
On January 3, 2003, Dixie filed suit against Falcon to accelerate all of the rent due under the terms of the lease. On November 19, 2003, Dixie filed its First Supplemental and Amending Petition alleging that Falcon and Marine Specialties had caused damage to the leased premises by failing to maintain the property, and sought damages against both defendants for the damage thus caused. On March 23, 2004, Dixie filed its Second Supplemental and Amending Petition seeking payment of the real estate taxes due and owing under the lease from the defendants.
After a two-day bench trial, the trial court rendered a judgment in favor of Dixie and against Falcon in the amount of $164,893.02 for 21.5 months of rent at the rate of $7,294.65 per month, and 21.5 months of unpaid property taxes. The trial court also rendered judgment in favor of Dixie and against Marine Specialties in the sum of $15,154.00 for damages sustained by the leased premises during the term of the lease in question. Thereafter, Dixie filed a Motion to Assess Costs and Fix Attorney's Fees. Although the Motion to Assess Costs was heard on June 16, 2005, no judgment has yet been rendered.
Dixie now appeals this final judgment. On appeal, Dixie alleges the following assignments *218 of error: (1) the trial court erred in finding that it had a duty to mitigate its damages; (2) the trial court erred in failing to award it rent and taxes for the property at issue for the entire five year term of the renewal of the lease; and (3) the trial court erred in failing to award it attorneys fees against Falcon and Marine Specialties as provided for under the terms of the lease.
Falcon filed an answer to the appeal alleging the following assignments of error: (1) the trial court erred in ruling that it did not timely and/or properly cancel/terminate the Lease at issue; (2) the trial court erred in applying the Louisiana law of mitigation, in quantifying Dixie's failure to mitigate and in its award of past due rents to Dixie; and (3) the trial court erred in failing to hold Marine Specialties liable to Falcon and/or jointly and severally liable with Falcon to Dixie.
Marine Specialties filed a brief alleging the following four assignments of error: (1) the trial court erred in awarding damages against it based upon its obligations under the Sublease in the amount of $1,928.00 dollars to replace curbing in the parking lot; (2) the trial court erred in awarding damages against it based upon its obligations under the Sublease in the amount of $1,221.00 to replace damaged grating; (3) the trial court erred in awarding damages against it based upon its obligations under the Sublease in the amount of $4,300.00 to repair two of the metal doors and replace one metal door; and (4) the trial court erred in awarding damages against it based upon its obligations under the Sublease in the amount of $7,705.00 to restore the premises to its original condition by removal of the office.

Procedural Discussion
Before addressing the substantive issues, we must discuss procedural and jurisdictional matters affecting this court's review in this appeal. Marine Specialties did not file an appeal of the judgment. Marine Specialties brief to this court shows intent to answer the appeal in order to have the judgment modified, revised, or reversed in part, and to have a more favorable judgment rendered on the issue of its liability. However, the brief did not accomplish that intent. See La. C.C.P. art. 2133(A). Article 2133(A) states that a party seeking such relief must file an answer to the appeal, stating the relief demanded; it must be filed not later than fifteen days after the return day or the lodging of the record, whichever is later. On May 16, 2005, Dixie filed a Motion for Devolutive Appeal in the trial court. The appeal was made returnable to this court 45 days following payment of the estimated costs of appeal. No other party filed a motion to appeal the judgment. On June 13, 2005, Dixie made payment of the costs and the record was lodged July 28, 2005. Thereafter, on August 10, 2005, counsel for Falcon filed an Answer to Dixie's Appeal. Marine Specialties brief was not filed until December 22, 2005, and therefore, was untimely and could not serve as an answer to the appeal. "A party who has not appealed or answered the appeal may not seek to have the trial court's judgment modified in its favor." Heck v. Lafourche Parish Council, 02-2044, p. 8 (La.App. 1 Cir.11/14/03), 860 So.2d 595, 602. Thus, we are unable to revise the judgment against Marine Specialties and therefore, we will not consider its assignments of error on appeal.

Dixie's Issue # 1:

Whether the trial court erred in finding that Dixie had a duty to mitigate its damages.[1]
Dixie argues that the trial court committed legal error when it found that Dixie *219 had a duty to mitigate its damages when Falcon abandoned the leased premises without lawful cause. Dixie maintains that since Falcon abandoned the premises without cause and failed to pay rent, it violated the terms of the lease and accelerated all rents due.
Falcon argues that Dixie was expressly informed that it had every intention to cancel the lease and not return to the leased premises.
"An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." LSA-C.C. art. 2002.
An injured party has a duty to mitigate his damages. Rogers v. Nelson Dodge Inc., 407 So.2d 443, 447 (La.App. 3d Cir.1981). However, that duty only requires that the injured party take reasonable steps to minimize the consequences of the injury. The standard by which these steps are judged is that of a reasonable man under like circumstances. See Philippe v. Browning Arms Co., 395 So.2d 310, 318 (La.1980) and Lawyers Title Ins. Co. v. Carey Hodges & Associates Inc., 358 So.2d 964, 968 (La.App. 1 Cir.1978); Easterling v. Halter Marine, Inc., 470 So.2d 221, 223 (La.App. 4 Cir.1985).
In the instant matter the district court granted Dixie unpaid rent "up to the time of trial." On April 22, 2004, the parties stipulated that Dixie could attempt to re-lease the property without waiving its claim to accelerated rental payments, yet as of the trial date of September 1, 2004, the property had not been leased. The record reflects that Dixie knew that Marine Specialists were only going to remain on the property until it purchased its own facility. Both Dixie and Falcon offered evidence that Dixie attempted to release the property. The district court, in its Reasons for Judgment, concluded, "The placing of a sign in front of a property on a dead-end street and relying on `word of mouth' notice to potential lessee's is not reasonable so as to obligate Falcon for rent until 2007."
We cannot conclude that the district court erred in determining that Dixie's efforts to mitigate were somewhat unreasonable when Dixie knew that Falcon had no intention of remaining on the property although its actual written notice was untimely. We find that the district court recognized in all fairness the duty of Dixie to mitigate and relied on Dixie's efforts (or lack thereof) in calculating damages. There is no error in this regard.

Dixie's Issue # 2:
Whether the trial court erred in failing to award Dixie rent and taxes for the property at issue for the entire five-year term of the renewal of the lease.
Dixie argues that it is entitled to a judgment for the accelerated rent for the entire term of the lease form November 14, 2002 through November 14, 2007, at a rate of $7,294.65 per month, for a total of $437,679. The district court awarded Dixie the "sum of ONE HUNDRED SIXTY-FOUR THOUSAND EIGHT HUNDRED NINETY-THREE AND 00/100 ($164,893.02) DOLLARS, representing 21.5 months of rental at the rate of $7,294.65 per month, with interest at the rate of 12% on the unpaid rent, plus unpaid taxes at the rate of $255.81 per month for 21.5 months and $2,558.11 for 2002, together with legal interest from the date of judicial demand until paid, plus 92% of the costs incurred in this matter."
*220 The district court determined that even though Falcon's intention not to renew the lease resulted in another five-year term by law, the acceleration of payment would be an unfair and a huge financial gain for Dixie, or a "windfall."
The facts and the law presented by the parties in the instant matter reflect that the district court took a fair approach. This Court has a long stated history as to the appellate review in determining whether the trier of fact is in error.
`When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusion of the trier of fact; there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.'
Martin v. Graves, 343 So.2d 1212, 1213 (La.App. 4 Cir.1977) quoting Canter v. Koehring Co., 283 So.2d 716, 724 (La.1993)
This Court finds no error by the district court in calculating damages in an amount feasible to the parties in the interest of fairness especially considering that Dixie had a duty to mitigate and Falcon had a duty to provide substantial notice of termination of the lease.
There was no error by the district court.

Dixie's Issue # 3:
Whether the trial court erred in failing to award Dixie attorneys fees against Falcon and Marine Specialties as provided for under the terms of the lease.
The "default" clause in the lease between Dixie and Falcon states in pertinent part, "If any attorney is employed to enforce and protect any claim against the Lessee, Lessee shall pay all costs and reasonable fees of said attorney, but in no event shall attorney's fees be less than $500.00."
Dixie maintains, and the record reflects, that it filed an itemized statement of the costs associated with attorney fees in the amount of $40,561. The judgment is silent as to attorney fees and Dixie argues that on September 1, 2004, at the trial on the merits, the parties stipulated that the issue of attorney fees would be deferred until after a judgment was rendered on the merits of the case by the district court.
Falcon argues that Dixie never offered evidence in support of an award for attorney fees and that this Court has no authority to consider such an issue.
Attorney fees and expenses of preparing for trial that are not taxable as costs can only be awarded if there is express statutory authority to do so. Plaintiff's demand for attorney fees was rejected in the district court; the silence of the judgment on this point is tantamount to rejection. Parish v. Bill Watson Ford, Inc., 354 So.2d 727, 728 (La.App. 4th Cir.1978).
Attorney's fees are not allowed except where authorized by statute or contract. State, DOTD v. Williamson, 597 So.2d 439, 441 (La.1992). Whether attorney's fees should be awarded is left to the sound discretion of the trial court and an award should not be disturbed on appeal absent an abuse of discretion. Miller v. *221 Ecung, 96-267 (La.App. 3 Cir. 6/5/96), 676 So.2d 656, 658. Factors to be considered by the trial court in making an award of attorney's fees include the degree of professional skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the time devoted to the case. Domite v. Imperial Trading Co., Inc., 94-16 (La.App. 3 Cir. 8/3/94), 641 So.2d 715, 720; Adams v. Franchise Finance Corp. of America 96-855 (La.App. 3 Cir. 2/5/97), 689 So.2d 572, 577.
The brief filed by Dixie fails to specifically cite to the record where the district court agreed that the issue of attorney's fees would be deferred until after a judgment was rendered. Since the issues presented by Dixie do not warrant this Court to conduct a de novo review, we are of the opinion that the silent judgment is equivalent to denial of the relief sought and we cannot conclude that the district court abused its discretion.
The brief of the appellant or relator shall set forth the jurisdiction of the court, a concise statement of the case, the action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought. (emphasis added)
Uniform Rules, Courts of Appeal, Rule 2-12.4, 8 LSA-R.S.

Falcon's Answer on Appeal

Issue # 1:
Whether the trial court erred in ruling that Falcon did not timely and/or properly cancel/terminate the Lease at issue.
The lease clearly reads in pertinent part:
Lessor and Leasee agree that this Lease shall automatically renew for ONE(1) consecutive period of FIVE (5) years each on and after the completion of the primary term . . . however, Leasee shall have the right and privilege of canceling this Lease at the end of the primary term or and renewal period (if applicable) by notifying Lessor in writing by certified mail at least 120 days prior to the expiration of the primary term or any renewal period (if applicable).
Falcon argues that as early as January 1999 Dixie was aware that it was vacating the premises and that correspondence between the parties, included in the record, leave no question of the Falcon's intent. Falcon also maintains that to apply the express language of the lease would lead to absurd consequences. We disagree.
Falcon forwarded written notice to terminate the lease to Dixie on July 30, 2002. Falcon had the right to cancel the lease under the terms of the contract by notifying Dixie "by certified mail at least 120 days" prior to the expiration of the lease. Clearly, Falcon failed to notify Dixie properly, hence the lease started anew for an additional five-year term. It is not enough, to reverse on appeal, that Falcon argues that its actions would only "lead to one logical conclusion: it intended to cancel the lease and never return to the premises."
Louisiana Civ.Code art. 2045 guides us in determining the intent of the parties to a contract. Article 2045 mandates that "[i]nterpretation of a contract is the determination of the common intent of the parties." Furthermore, under La. Civ.Code art. 2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation *222 may be made into the parties' intent." Additionally, under La. Civ.Code art. 1971, "parties are free to contract for any object that is lawful, possible, and determined or determinable." Lastly, this Court has concluded that the interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 20 (La.6/29/01), 808 So.2d 294, 307; Meaghan Frances Hardcastle Trust v. Fleur De Paris, Ltd., XXXX-XXXX, p. 8 (La.App. 4 Cir. 6/29/05), 917 So.2d 448, 453.
This Court concludes, as we did in Benchabbat v. Fidelity Acceptance Corp., 441 So.2d 398, 400 (La.App. 4 Cir.1983), that "there is no ambiguity in dispute; the instant case deals solely with the question of proof and evidence presented at trial. Defendant just failed to prove timely notice." The lease is clear and Falcon failed to submit written notice to terminate the lease within the time period in which it contracted with Dixie.

Issue # 2:
Whether the trial court erred in failing to hold Marine Specialties liable to Falcon and/or jointly and severally liable with Falcon to Dixie.
Marine Specialist was cast in judgment for $15,154 in damages to the leased premises. Falcon argues that Marine Specialists should have been held severally liable for rental damages as well as property damages, which would be consistent with the sublease between the parties.
The lease agreement between Falcon and Dixie clearly states that the property is to be restored to its original condition upon termination of the lease. The record reflects that the property was not restored the way in which it was initially found. For that reason, the district court properly held Marine Specialists responsible for the cost of the repairs. However, Marine Specialists fulfilled its rental obligation as per its lease between it and Falcon, we would be incorrect to find that the district court erred in failing to hold Marine responsible for an obligation that it fulfilled.
Louisiana jurisprudence provides that when parties enter into a sublease, a new contract comes into existence, which is separate and distinct from the original lease between the owner and the sublessor. There is no privity of contract between the sublessee and the original owner-lessor. "The sublessee is not considered as an original lessee and may only exercise rights under the original lease through the original lessee." Webb v. Theriot, 97-624 (La.App. 3 Cir. 10/29/97), 704 So.2d 1211, 1214.
This argument is without merit.
At the conclusion of testimony at the trial of this matter, the trial judge asked plaintiff's counsel if there were any rebuttal, and counsel replied:
No, your honor. Your honor, with respectof course, our contract calls for attorney fees in case your honor awards any rental. I would assume that we would just hold the record open in case an award of attorney fees is made and we will do a traversal
THE COURT:
Is that agreeable?
MR. POIRIER:
Certainly, your honor.
MS. MAGNER:
Yes, your honor.
Following a bench trial, the trial court issued judgment on March 22, 2005 in favor of Dixie and against Falcon in the amount of twenty-one and one-half months' rent and prorated property taxes, *223 for a total of $164,893.02. The trial court also awarded judgment in favor of Dixie and against Specialties in the amount of $15,154 for damages to the leased premises. Although the lease agreement provided for recovery of costs and attorney's fees, the trial court's judgment did not quantify and award such costs and fees, the court having deferred those issues, together with a Motion to Strike the testimony of Dixie's expert witness, Don Hawkins.
The written reasons for judgment provide in pertinent part:
By contractual agreement, Dixie is entitled to an award of attorneys fees in connection with this matter. Those rights are reserved them to be heard by rule.
On April 27, 2005, Dixie filed a Motion to Assess Costs and Fix Attorney's Fees.
On May 16, 2005, Dixie filed a Motion for Devolutive Appeal. An Order of Appeal was granted and entered on May 17, 2005.
On June 28, 2005, the trial court conducted a hearing on Dixie's Motion to Assess Costs and Fix Attorney's Fees, over jurisdictional objections by Falcon and Specialties. On May 9, 2006, the trial court rendered judgment awarding Dixie costs in the amount of $2,763.60 and attorney's fees in the amount of $40,561, assessing the award against Falcon to the extent of 92% and against Specialties to the extent of 8%.
This appeal by Falcon follows.
Falcon contends that the trial court erred in assessing costs and attorney's fees after it was divested of jurisdiction by the Order of Appeal. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right, inter alia, to execute or give effect to the judgment when its execution or effect is not suspended by the appeal or to set and tax costs and expert fees. La.C.Civ.Pro. art. 2088(7) and (10).
Dixie contends that Louisiana jurisprudence considers attorney's fees, when allowed by statute or contract, to be taxable as "costs" within the meaning of La.C.Civ. Pro. art. 2088, citing Goff v. Jenny & Shorty's Truck Stop, Inc., 301 So.2d 379 (La.App. 4 Cir.1974). Goff was a suit on a worker's compensation settlement and compromise. The trial court appointed an attorney to represent the employee, and, at the time the compromise was approved and judgment rendered, the judgment also fixed the fee of the appointed attorney at $50 and taxed the same as costs. After assessment of the fee by the trial court, the employer and insurer appealed on the ground that the $50 fee exceeded the statutory maximum attorney's fee of $35. This Court amended the judgment to reduce the attorney's fee to the statutory maximum, but the parties had not raised the issue of whether the fee properly was taxed as a "cost." We do not find this holding to constitute a holding as jurisprudence constant that attorney's fees are costs within the meaning of La.C.Civ.Pro. art. 2088(10).
Alternatively, Dixie contends that the judgment awarding fees and costs comes within the language of La.C.Civ.Pro. art. 2088(7), which provides that the trial court retains jurisdiction to execute or give effect to the judgment when its execution or *224 effect is not suspended by the appeal[2]
Dixie contends that the trial court's original reasons for judgment recognized Dixie's right to an award of attorney's fees and reserved Dixie's right to have the issue heard by a rule. Thus, the trial court had the right to give effect to its original judgment by conducting the hearing anticipated in the written reasons for that judgment and awarding fees pursuant to La.C.Civ.Pro. art. 2088(7).
Falcon relies on the language in La. C.Civ.Pro. art. 2088, providing that the trial court's residual jurisdiction exists "only over those matters not reviewable under the appeal." In support of its position, Falcon cites Smith v. Doe, XXXX-XXXX (La.App. 4 Cir. 4/11/01), 786 So.2d 154. In that case, the trial court entered judgment but did not address the question of whether the insurance company defendant failed to promptly and fairly adjust the plaintiff's claim. The plaintiff did not appeal the judgment; however, he relied on his Motion to File Cross-Appeal filed four months after the Order of Appeal, and on the insurer/appellant's brief, contending that it supported his claim of failure properly to adjust the claim. This Court rejected that argument, holding that the plaintiff failed to appeal the issue during either the 30-day delay for filing a suspensive appeal under La.C.Civ.Pro. art. 2123 or the 60-day delay for filing a devolutive appeal established by La.C.Civ.Pro. art. 2087. The trial court had been divested of jurisdiction four months before the plaintiff filed his Motion for Cross-Appeal. This Court struck all allegations of the plaintiff's cross-appeal, holding that when the defendant's appeal was perfected in the Court of Appeal, the trial court was divested of jurisdiction pursuant to La. C.Civ.Pro. art. 2088. This Court did not address specifically the issue raised by Falcon concerning "matters not reviewable under the appeal."
Falcon also cites Turner v. D'Amico, 96-0624 (La.App. 1 Cir. 9/19/97), 701 So.2d 236 in support of its interpretation of article 2088. In Turner, after the trial on the merits, the trial court ruled in favor of the plaintiffs and against the solidary defendants. One defendant filed a suspensive appeal on December 7, 1995. A week after the appeal was filed, the trial court signed an amended judgment allocating percentages of fault to each of the defendants who had been found solidarily liable in the original judgment. The Court of Appeal for the First Circuit held that the trial court erred in rendering an amended judgment after a defendant filed an appeal, citing La.C.Civ.Pro. art. 2088. The opinion does not address Falcon's suggested interpretation of "matters not reviewable under the appeal." Furthermore, there is no indication in the opinion that the original judgment or accompanying reasons contained any reservation of the allocation of fault or reference of that issue to a subsequent hearing. Indeed, the Court of Appeal found that the trial court's omission of an allocation of fault constituted reversible error.
Falcon also cites the First Circuit opinion in Louisiana Casino Cruises, Inc. v. Capitol Lake Properties, Inc., XXXX-XXXX (La.App. 1 Cir. 3/24/05), 915 So.2d 784, a case arising from a lease agreement. In that case, the trial court rendered judgment on November 21, 2001, having given oral reasons for judgment on November 9, 2001. In the course of stating his oral reasons for judgment, the trial judge said that he intended to address the issue of attorney's fees at a later date. The judgment as rendered was silent as to attorney's fees.
*225 The plaintiff appealed the judgment, the Court of Appeal affirmed on February 14, 2003, and the judgment became final on March 14, 2003. On September 26, 2003, the prevailing defendant filed a motion to determine attorney's fees, which the trial court awarded. The court of appeal reversed, holding that the jurisdiction of the trial court was divested when the order of appeal was granted. The court noted:
[O]nce the trial court granted the appeal of the November 21, 2001 judgment, the trial court was divested of jurisdiction and had no authority to render the judgment of February 10, 2004 unless the judgment concerned issues not reviewable on appeal. Clearly, the issue of an award of attorney's fees was part of the main demand and part of [the successful defendant]'s reconventional demand. Therefore, that issue was reviewable on the appeal of the judgment of November 21, 2001, and the trial court lacked jurisdiction to address that issue in the subsequent judgment of February 10, 2004.
Louisiana Casino Cruises, Inc. v. Capitol Lake Properties, at p. 3, 915 So.2d at 785.
It does not appear from the reported opinion that the original judgment or reasons found that a party was entitled to an award of attorney's fees, reserving the hearing on the amount to be awarded to a later date as in the case at bar.
R & B also relies on Ken Lawler Builders, Inc. v. Delaney, 36,865 (La.App. 2 Cir. 3/5/03), 840 So.2d 672. In that case, the plaintiff landlord sued for damages caused by repudiation of a lease including, inter alia, contractual attorney's fees. On the plaintiff's motion for summary judgment, the trial court rendered judgment in its favor; however, the judgment neither awarded nor mentioned the claim for attorney's fees. The plaintiff's successor in interest and current owner of the leased premises had intervened and devolutively appealed. While the summary judgment appeal was pending, the plaintiff filed a "Motion for Award of Attorney Fees and Examination of Judgment Debtor" in the trial court. The defendants and the plaintiff's successor/intervenor/appellant filed a motion to dismiss, alleging the trial court no longer had jurisdiction pursuant to La. C.Civ.Pro. art. 2088; however, the trial court denied the motion to dismiss and rendered judgment awarding attorney's fees. The Court of Appeal reversed the award, holding that the claim for attorney's fees arose from the lease, and whether the lease was viable and breached were the matters reviewable on appeal. Therefore, the plaintiff's recovery of attorney's fees provided for in the lease was a part of the trial court's decision. Thus, the Court held, the trial court was divested of jurisdiction to hear the fee issue. Furthermore, the Court held that all issues related to the breach of the lease were extinguished and merged into the final judgment rendered by the district court:
As previously stated, neither the record nor the previous judgment rendered indicate any reservation of the attorney fees issue for future adjudication. In this instance, we deem it appropriate to apply the principle that a demand not granted or reserved in the judgment must be considered as rejected. The legal effect of the silence of a judgment on any part of a demand that might have been allowed under the pleadings is a rejection of such part of the demand, which tacit rejection has the force and effect of res judicata against subsequent suit for such part of the demand. [Citations omitted.]
Ken Lawler Builders, Inc. v. Delaney, at p. 4, 840 So.2d at 675.
In the case at bar, the original written reasons for judgment directed that Dixie was entitled to attorney's fees under its *226 lease, and specifically reserved the setting of those fees for a later hearing, with the apparent approval of all counsel.
Finally, Falcon relies on the opinion from the Court of Appeal for the First Circuit in Clement v. Graves, XXXX-XXXX (La.App. 1 Cir. 9/28/05), 924 So.2d 196. This was a suit arising from an agreement to purchase and sell. The trial court rendered judgment in favor of the plaintiff on May 17, 2004, and the defendant appealed. On June 13, 2005, while the matter was pending on appeal, the plaintiff filed a "Motion to Supplement Record on Appeal and Dismiss Suspensive Appeal", based on the defendant/appellant's failure to post bond. The district court granted the motion and awarded attorney's fees for "frivolous appeal." By order dated June 21, 2005, the appellate court granted the motion to supplement the record with the motion to dismiss filed in the trial court and a subsequent order signed by the trial court. The appellate court converted the suspensive appeal into a devolutive appeal. It then considered the district court's award of attorney's fees for frivolous appeal and noted that the trial court was divested of jurisdiction upon signing the June 22, 2004 order granting the appeal. Consequently, the trial court's order dismissing the suspensive appeal and awarding attorney's fees for frivolous appeal is invalid.
The foregoing cases do not address the basic issue raised in this case, that is, whether the written reasons for judgment effectuated the trial court's clear intent, having specifically found that Dixie was entitled to contractual attorney's fees, to reserve jurisdiction to hold a hearing, apparently with the consent of counsel at the close of the testimony, and to fix the amount of those fees. Dixie characterizes the hearing on the rule to fix attorney's fees under the circumstances of this case to be an appropriate exercise of the trial court's residual jurisdiction under the provisions of La.C.Civ.Pro. art. 2088(7).
We conclude that the issue of attorney's fees and costs is an integral part of the original suit, and that all parties were aware, at the very latest upon receipt of the written reasons for judgment, that the trial court found Dixie was entitled to an award of attorney's fees and costs. However, that award was not included in the judgment from which the appeal in 2005-CA-1212 was taken.
Upon review of the record in 2006-CA-1209 of this consolidated appeal, the Court noticed that the record does not contain a transcript of the hearing on the Motion to Assess Costs and Fix Attorney's Fees held on June 28, 2005. Upon an inquiry by the Clerk of this Court to the Clerk of the 25th Judicial District Court, we were advised that there is no indication that a hearing on that date was transcribed.
From the foregoing, and in light of our affirmance of the judgment of the trial court bearing number 2005-CA-1212, it is apparent that Dixie is entitled to recover its costs and reasonable attorney's fees.

Decree
For the foregoing reasons, we affirm the judgment of the district court and dismiss the argument presented by Marine Specialists and in the interest of justice, we remand this matter to the trial court for a transcribed hearing on the Motion to Assess Costs and Fix Attorney's Fees.
AFFIRMED IN PART; REMANDED IN PART.
NOTES
[1] This argument encompasses issue two of Falcon's Answer to the appeal which questions whether the trial court erred in applying the Louisiana law of mitigation, in quantifying Dixie's failure to mitigate and in its award of past due rents to Dixie.
[2] In this case, Dixie took only a devolutive appeal from the trial court's judgment.