860 So.2d 595 (2003)
David T. HECK, P.E.
v.
LAFOURCHE PARISH COUNCIL.
No. 2002 CA 2044.
Court of Appeal of Louisiana, First Circuit.
November 14, 2003.
Rehearing Denied December 11, 2003.
*598 Gregory J. Schwab, J. Wayne Rouse, Thibodaux, for Plaintiff/Appellant, David T. Heck, P.E.
W. Shelby McKenzie, Lloyd J. Lunceford, Phillip E. Foco, Baton Rouge, for Defendant/Appellee, Lafourche Parish Council.
Leslie J. Clement, Jr., Thibodaux, for Intervenor/Appellant, Gerald"Buzz" Breaux, as President of the Parish of Lafourche.
Before: WHIPPLE, KUHN and MCDONALD, JJ.
WHIPPLE, J.
In this appeal, plaintiff, David Heck, and intervenor, Gerald Breaux, Lafourche Parish President, challenge the judgment of the trial court, awarding Heck certain sums for engineering services he performed for Lafourche Parish. For the following reasons, we amend in part, affirm in part, reverse in part and render.

FACTS AND PROCEDURAL HISTORY
David T. Heck, P.E., a Professional Corporation ("Heck") entered into two contracts with the Lafourche Parish Council whereby he agreed to provide engineering services in connection with various road construction contracts. Prior to the execution of these contracts, the Lafourche Parish *599 Council approved the contracts and authorized the Parish President to sign the contracts at issue. These contracts were then signed on December 23, 1998 and August 19, 1999, by Heck and by Aaron Caillouet, who was the Lafourche Parish president at that time and who, pursuant to the contracts, was acting as a representative of the Lafourche Parish Council.
In January 2000, Gerald "Buzz" Breaux took office as Lafourche Parish President. Thereafter, by letter dated January 22, 2001, Breaux instructed Heck not to implement or perform any future engineering services with regard to Lafourche Parish roadway improvements which had not been previously approved by him. The stated reason for Breaux's directive to Heck that he cease performing engineering services for the parish was an alleged "lack of funds." However, Heck questioned Breaux's authority to demand that he cease work under the contracts with the Lafourche Parish Council, and he was concerned that if, in fact, he did interrupt his work under the contracts, he would be in risk of default under the contracts for non-performance. Thereafter, on February 13, 2001, the Lafourche Parish Council passed Resolution No. 01-151, stating that the council needed to "ensure adequate control of professional and consultant contracts." Thus, in that resolution, the council affirmed that the council, as governing authority for the Parish of Lafourche, had the exclusive authority to approve all professional services contracts.
Accordingly, Heck continued to perform engineering services under the contracts he had entered into with the Lafourche Parish Council and continued to bill the council for the work performed. However, Breaux refused to pay the bills submitted by Heck. Additionally, by letter dated July 10, 2001, Breaux informed Heck that "[a]s of today, July 10, 2001, you are hereby notified and given 30 days notice that your contract with the Lafourche Parish Council and Administration for all services performed by you or your engineering firm will cease on the 30th day from the date of this letter."[1]
Apparently, after Breaux sent the letter of termination to Heck, the parish council passed another resolution, providing that the parish president did not have the authority to terminate the contracts between the council and Heck and reinstating Heck's services.[2] Thus, relying on the resolutions of the council and his belief that Breaux did not have the authority to terminate his contracts with the parish council, Heck continued to perform engineering services under his contracts, services for which Breaux refused to pay.
After making written demand for payment of his outstanding invoices under both contracts, Heck instituted two suits on open account against the Lafourche Parish Council, seeking to recover for services rendered under the two contracts he had with the parish council. Shortly thereafter, the suits were consolidated. Additionally, Breaux intervened in this matter, contending that the Lafourche Parish Council did not have authority under the Lafourche Parish Home Rule Charter to enter into contracts with Heck through the use of ordinances and, thus, that the contracts were null and void.
*600 After trial on the merits, the trial court found that there was a meeting of the minds between the parties as to object and price and, thus, that contracts were confected between the parties. The court further stated that there was no evidence to convince the court that the amounts submitted by Heck in his invoices were incorrect. Thus, with regard to services rendered before January 22, 2001, the court awarded Heck the sums of those invoices, together with interest and attorney's fees of twenty-five percent of the principal sum and interest. With regard to invoices that were paid after suit was filed, the trial court ruled that Heck was entitled to interest from the date of judicial demand until they were paid. The court also awarded attorney's fees in connection with those invoices in the amount of twenty-five percent of the interest due.
However, the court further found that the parish council had intended that Caillouet, the president, would represent the council with regard to these contracts, as evidenced by the resolutions authorizing him to sign the contracts. Additionally, the court found that pursuant to the Lafourche Parish Charter, the parish president had the authority toadminister the contracts and further found that the parish council had no responsibility in the enforcement or cancellation of the contracts.
Thus, the court concluded that with regard to services rendered after January 22, 2001, the date of the letter in which Breaux instructed Heck not to perform any future services, Heck "was put on notice that there was not a meeting of the minds and that he shouldn't do the work." Nonetheless, the court found that Heck continued to perform work because he thought the council had authority to allow him to keep working and, thus, thought he was justified and in good faith. Accordingly, the court concluded that Heck was entitled to payment for services rendered after January 22, 2001, on the basis of quantum meruit or unjust enrichment. With regard to the amount of the award under quantum meruit, the court found that Heck was entitled to the sums of the invoices at issue with legal interest. However, the court declined to award attorney's fees on those sums, noting that the award was not made pursuant to open account.
The court further found that Heck's contracts were terminated thirty days after the date of the letter of termination that Breaux sent to Heck, that date being August 10, 2001.[3] Thus, the court concluded that Heck could not make a claim for services rendered after that date under unjust enrichment or quantum meruit and refused to make any award for those services.
Thereafter, in accordance with its reasons, the trial court rendered judgment in favor of Heck and against "the Lafourche Parish Government" for various sums for the services rendered by Heck, together with interest. The trial court also award attorney's fees on sums for invoices for services rendered prior to January 22, 2001.
Thereafter, in response to a motion for new trial filed by Breaux, the trial court rendered an amended judgment, which awarded Heck the same sums as the original judgment, but amended the award of costs. From this judgment, Heck and Breaux appeal.
Heck avers that the trial court erred: (1) in finding that the two engineering contracts ceased to exist in January 2001, because there was no longer a "meeting of *601 the minds" even though the court also recognized that a "termination letter" was not even mailed to the engineer until sometime in late July or August 2001; (2) in finding that the parish president had unilateral authority to without cause cancel a contract to which he was not a party; (3) in finding that the contract could be cancelled when the contract provides for the only legitimate means of canceling the contract, which was "substantial failure ... to perform," and the court found that there was absolutely no proof that Heck failed to substantially perform; (4) in disallowing the award of $7,112.12 for invoice no. 00-21, when the engineer reasonably relied on the authority of the parish president in directing engineering and attenuating engineering services arising from the engineering contract; (5) in allowing Breaux to intervene in the lawsuits at issue when he was not a party to the contracts and had no independent and justiciable interest in the outcome of the matter; and (6) in granting an offset to the defendant where there was never an affirmative defense raised asserting such, there was never a recoventional demand asserting the claim, and there was no testimony or credible proof of the nature, amount, circumstances or time of the claimed offset.
In his appeal, Breaux contends that the trial court erred: (1) in failing to grant the motion for summary judgment by Breaux; (2) in rendering a judgment against Lafourche Parish Government, where the Lafourche Parish Council, not the Lafourche Parish Government, was the named defendant; (3) in allowing recovery for services rendered after Breaux instructed Heck to perform no further services without his authorization; (4) in ordering payment of attorney's fees where the cause of action was based upon contract, not open account, and where, alternatively, Heck did not comply with the requirements of LSA-R.S. 9:2781; and (5) in calculating the offset amount.
The Lafourche Parish Council also filed a brief setting forth several assignments of error, although it did not appeal or answer the appeal. In response to this brief, Breaux has filed a motion with this court to dismiss the appeal of the Lafourche Parish Council. This motion was referred to the merits of the appeal and will be addressed herein.

BREAUX'S INTERVENTION IN THE SUIT

(Heck's Assignment of Error No. 5)
In this assignment of error, Heck contends that the trial court erred in allowing Breaux to intervene in this consolidated matter where Breaux was not a party to the contracts at issue and had no justiciable interest in the matter. Breaux, on the other hand, argues that, as chief executive officer of Lafourche Parish, he is fulfilling his duties and obligations to the parish and, as such, has an interest in the outcome.
Louisiana Code of Civil Procedure article 1091 provides that a third party having an interest in a pending action may intervene to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by: joining with the plaintiff in demanding the same or similar relief, uniting with the defendant in resisting the plaintiff's demand, or opposing both the plaintiff and defendant. This article has been interpreted broadly as no longer requiring that the intervenor have such a direct interest in the pending action that he will obtain immediate gain or suffer immediate loss. See Amoco Production Company v. Columbia Gas Transmission Corporation, 455 So.2d 1260, 1264 (La. *602 App.4th Cir.), writs denied, 459 So.2d 542-543 (La.1984).
Rather, it is sufficient that the third party have a justiciable right related to or connected with the object of the principal suit. See LSA-C.C.P. art. 1091, Official Revision Comment (c); Livingston Downs Racing Association, Inc., 96-1988, p. 6 (La.App. 1st Cir.9/23/97), 700 So.2d 1021, 1023. A "justiciable right" as used in the context of intervention is the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it. Livingston Downs Racing Association, Inc., 96-1988 at p. 6, 700 So.2d at 1023.
In the instant case, Breaux sought to intervene in this action, in his capacity as parish president, to oppose the claims of Heck along with the named defendant. In opposing Heck's claim, Breaux has a real interest in the underlying determination of whether he, as parish president, has the authority to administer and terminate contracts entered into by the parish council. Moreover, Breaux's interest in a determination of whether his actions with regard to the contracts at issue was valid is clearly connected to the object of the pending action, i.e., enforcement of the contracts and payment for services on open account. Accordingly, we find no error in the trial court's ruling, allowing Breaux to intervene. This assignment of error lacks merit.

MOTION TO DISMISS APPEAL
Having determined that Breaux was properly allowed to intervene in this suit, we now consider Breaux's "Motion to Dismiss Appeal of Lafourche Parish Council" filed with this court. As stated above, the Lafourche Parish Council in its appellate brief set forth three assignments of error, challenging the trial court's judgment. However, it did not appeal or answer either Breaux's or Heck's appeal herein. In his motion to dismiss appeal, Breaux contends that because the Lafourche Parish Council did not file an appeal, the assignments of error raised in its brief should not be considered. In the alternative, Breaux contends that if the brief of the parish council designating assignments of error is construed as an appeal, the appeal was untimely and should be dismissed.
A party who has not appealed or answered the appeal may not seek to have the trial court's judgment modified in its favor. See LSA-C.C.P. arts. 2082, 2083 & 2133; Kibbe v. Lege, 604 So.2d 1366, 1373 (La.App. 3rd Cir.), writs denied, 606 So.2d 540, 541 (La.1992). Accordingly, because the Lafourche Parish Council has not appealed or answered the appeal, we will not consider its assignments of error, seeking to modify the trial court's judgment. However, because there is no appeal or answer to appeal, we deny as moot Breaux's motion to dismiss the appeal of the parish council.

AUTHORITY OF BREAUX TO ADMINISTER AND CANCEL THE CONTRACTS AT ISSUE

(Heck's Assignments of Error Nos. 1, 2 & 3; Breaux's Assignment of Error No. 3)
In these assignments of error, Heck challenges the trial court's findings: that Breaux, as parish president, had unilateral authority to cancel the contracts without cause; that the contracts ceased to exist as of January 2001, when Breaux instructed Heck to perform no additional work without Breaux's approval, based on a finding that there was no longer a meeting of the minds at that point; and that the contract could be cancelled in the absence of a finding of substantial failure to perform by *603 Heck. Thus, Heck requests that this court render an award for all services performed under the contracts together with interest and attorney's fees on those sums.
Breaux, on the other hand, contends that the trial court erred in allowing recovery to Heck for any services performed without Breaux's approval.
Thus, the primary issue presented by these assignments of error is the extent of Breaux's authority to administer and terminate the contracts at issue, contracts to which he was not a party. Contracts have the effect of law between the parties. LSA-C.C. art. 1983; Buck's Run Enterprises, Inc. v. Mapp Construction, Inc., 99-3054, p. 5 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 432. Furthermore, laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written. Green v. New Orleans Saints, XXXX-XXXX, p. 6 (La.11/13/00), 781 So.2d 1199, 1203. Accordingly, the contracts, the resolutions regarding the contracts and the 1976 Home Rule Charter of the Parish of Lafourche are the controlling documents in this matter.
Both contracts entered into between Heck and the Lafourche Parish Council contain the following language: "This CONTRACT entered into by the LAFOURCHE PARISH COUNCIL of the STATE OF LOUISIANA, ... herein represented by Aaron Caillouet, President, hereinafter referred to as the "Owner", and DAVID T. HECK, P.E., A Professional Corporation." Thus, the terms of the contracts provide that the parish council was "represented" in the contracts by the prior parish president. This contract language gives rise to questions of how broad the term "represent" was intended, i.e., was this language intended to give Caillouet the authority to administer the contract and possibly terminate it or was the language used to merely indicate that Caillouet was representing the parish council in a signatory capacity.[4]
In interpreting this contract language, we must also consider the provisions of the Home Rule Charter in effect at the time of execution of the contracts. This court has previously considered the respective powers of the Lafourche Parish Council and the parish president under the Home Rule Charter in the matter of Breaux v. Lafourche Parish Council, XXXX-XXXX (La.App. 1st Cir.5/9/03), 851 So.2d 1173. Therein, the issue presented was the parish council's authority to contract on behalf of Lafourche Parish and, conversely, the parish president's authority to contract without necessity of additional ordinance or resolution. In concluding that the parish council was the entity with power to contract on behalf of the parish, this court noted that the Home Rule Charter clearly gave the parish council the authority to approve contracts, but was silent as to any independent contracting authority of the parish president.[5] *604 Breaux, XXXX-XXXX at p. 6, 851 So.2d at 1177.
Additionally, we note that Article IV, Section G of the Home Rule Charter also grants the parish council the power to "authorize[] a person to sign or execute on behalf of the governing authority a contract which has been previously approved."[6] (Emphasis added). This language of the Home Rule Charter is, in fact, consistent with the wording of the resolutions that empowered Caillouet to act on behalf of the council with regard to these particular contracts. Specifically, through Resolution No. 98-104, the Lafourche Parish Council authorized the parish president "to sign contracts with David T. Heck, P.E.... for engineering and construction of road improvements in Road Sales Tax District No. 3" and "to sign any and all documents relating to the construction program." (Emphasis added). Additionally, through Resolution No. 99-055, the parish council authorized the parish president "to sign any and all documents with David T. Heck, P.E.... for engineering and construction of road improvements in Road Sales Tax District No. 5" and to "sign any and all documents relating to the construction program, after all contracts and documents to the construction program, and street priorities are approved by the Lafourche Parish Public Works Committee, and ratified by the Lafourche Parish Council." (Emphasis added). Thus, the extent of power granted to the past parish president by these resolutions with regard to the contracts at issue was simply the power to sign the contracts and to sign other documents upon ratification of the council.
Moreover, while the trial court held that Breaux, as parish president, had the exclusive authority under the Home Rule Charter to administer the contracts at issue, we find no support for this conclusion in the language of the Charter. With regard to the powers and functions of the parish president, the Home Rule Charter provides that the parish president "shall be the chief executive officer of the parish and shall be vested with the executive power of the parish."[7] However, as this court noted in Breaux, this executive power must be interpreted by reading the Home Rule Charter as a whole to give it meaning. Breaux, XXXX-XXXX at p. 6, 851 So.2d at 1177.
While generally stating that the parish president is vested with the "executive power" of the parish, the Home Rule Charter then specifically enumerates the powers and functions of the parish president, none of which enumerated powers is the authority to unilaterally administer or cancel contracts entered into by the parish council. Moreover, with regard to other powers and duties of the parish president, Article II, Section B of the Home Rule Charter provides that the parish president shall "perform such other duties as may be prescribed by this charter or by ordinance." (Emphasis added). In sum, neither the Home Rule Charter nor the ordinances relating to the contracts at issue grant the parish president the authority to *605 unilaterally terminate the contracts the parish council entered into with Heck.
Thus, interpreting all these documents together, we conclude that the language of the contract providing that Caillouet, as parish president and president of the parish council at the time, was "representing" the council in the contracts must be interpreted as granting the parish president the authority to represent the parish council to the extent that he was responsible for signing or executing the contracts on behalf of the parish council. See Green, XXXX-XXXX at pp. 6-7, 781 So.2d at 1203-1204. These documents do not grant the parish president authority to unilaterally administer or terminate the contracts.
Accordingly, we must conclude that the trial court committed legal error in interpreting the Home Rule Charter and other relevant documents herein as granting Breaux the authority to demand that Heck cease performing engineering services under the contracts or as granting him authority to terminate those contracts. Because Breaux's actions exceeded his authority and had no effect on the contract between Heck and the parish council, we must conclude that Heck was entitled to all sums due to him under those contracts.[8]

TRIAL COURT'S FAILURE TO AWARD SUMS FOR INVOICE NO. 00-21R

(Heck's Assignment of Error No. 4)
In this assignment of error, Heck contends that the trial court erred in failing to award him the full sum billed under invoice number 00-21R, which he contends was for services he performed at the direction of Caillouet, when he was parish president.
The record establishes that during performance of road improvements in District 3 of Lafourche Parish, it became apparent that there was a small section of roadway in neighboring Terrebonne Parish, of approximately 1,140 feet, that would not be hard surfaced. Thus, there would not be a continuous hard-surfaced roadway at the parish line, due to this small section of shell road in Terrebonne Parish. In order to provide for a uniform roadway, Parish President Caillouet requested that Heck perform engineering services needed to estimate the cost of hard surfacing that stretch of roadway in an attempt to negotiate an intergovernmental agreement with Terrebonne Parish whereby Terrebonne Parish would pay for the hard surface of that portion of the road.
Heck performed the engineering services for that stretch of road in Terrebonne Parish, but the intergovernmental agreement was never executed. Heck then invoiced the Lafourche Parish Council for $7,112.12 for his services in relation to that portion of roadway. In concluding that Heck was not entitled to full payment under invoice number 00-21R, the court noted that the work performed was design work for property outside of the Parish of Lafourche and further found that Caillouet, as parish president, did not have the authority to authorize engineering work outside of the parish and require the citizens of Lafourche Parish to pay for it.[9] We find no error in this ruling.
*606 Because, as stated above, the contract is the law between the parties, Buck's Run Enterprises, Inc., 99-3054 at p. 5, 808 So.2d at 432, our resolution of this issue necessarily turns on an interpretation of the contract. The contract at issue provides for the performance of engineering services in "Road Sales Tax District No. 3, Ward 11." At trial, Heck acknowledged that the contract only authorized work in Lafourche Parish, Road Sales Tax District 3, Ward 11, and that none of District 3 was located in Terrebonne.
Accordingly, we find no error in the trial court's conclusions that the charges for work in invoice 00-21R exceeded the scope of the contract authorizing Heck's services and that Caillouet did not have the authority to authorize work beyond the scope of the contract and outside of the Parish of Lafourche. This assignment of error by Heck lacks merit.

AWARD OF AN OFFSET

(Heck's Assignment of Error No. 6; Breaux's Assignment of Error No. 5)
In this assignment of error, Heck contends that the trial court erred in offsetting the amount of his award by $23,945.74, where the defendant herein, the Lafourche Parish Council, did not raise the affirmative defense of offset. Additionally, while acknowledging that Breaux, as intervenor, raised this affirmative defense, Heck argues that the offset should not have been awarded because Breaux, in his petition of intervention, did not claim a specific amount of overpayment, the reason for the claimed overpayment or the particular invoice on which overpayment was alleged.
However, we note that at trial on the merits, counsel for Heck acknowledged that Heck had retained $23,945.74, which Breaux claimed was paid in error. A party is bound by his judicial confession, which constitutes full proof against the party who made it. LSA-C.C. art. 1853; Scoggins v. Frederick, 98-1815, p. 6 n.11 (La.App. 1st Cir.9/24/99), 744 So.2d 676, 682 n. 11, writ denied, 99-3557 (La.3/17/00), 756 So.2d 1141. Accordingly, we find no error in the trial court's granting of an offset of $23,945.74, for those sums that Heck admitted he had previously received.
With regard to the calculation of the offset, Breaux contends that the trial court erred by first awarding legal interest on the principal sums due before then reducing the award by the offset of $23,945.74. He contends that the wording of the judgment effectively allowed Heck to improperly collect interest on the offset amount. However, considering the lack of evidence offered at trial as to the date when Heck received this amount allegedly paid in error or as to whether such payment was even received before judicial demand, we decline to amend the trial court's judgment with regard to the offset.

AWARD OF ATTORNEY'S FEES

(Breaux's Assignment of Error No. 4)
In this assignment of error, Breaux contends that the trial court erred in awarding Heck attorney's fees on open account, pursuant to LSA-R.S. 9:2781, where the cause of action at issue is based upon contract and where Heck did not comply with the requirements of LSA-R.S. 9:2781. Heck, on the other hand, requests that this court award him additional attorney's fees in connection with this appeal.
*607 At the outset, we note that the mere fact that a claim is based on an underlying contract between the parties does not prevent a party from asserting recovery under open account. Indeed, an open account necessarily involves some type of contractual relationship between the parties. Operational Technologies Corporation v. Environmental Contractors, Inc., 95-0413, p. 3 (La.App. 1st Cir.11/9/95), 665 So.2d 14, 15. An "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not the parties expected future transactions. Additionally, an "open account" may include debts incurred for professional services. LSA-R.S. 9:2781(C); Dear v. Mabile, 93-1188, p. 3 (La.App. 1st Cir.5/20/94), 637 So.2d 745, 747.
In the instant case, the contracts contemplated that engineering services would be performed on various roads and streets in the road sales tax districts in question, and the parties intended that these engineering services would occur over the course of several years. Although the contract provided a method for calculating Heck's fee, the fee to which Heck was entitled was left open in the sense that it depended upon the work performed, as projects were approved by the parish council. See Metropolitan Reporters, Inc. v. Avery, 95-504, p. 6 (La.App. 5th Cir.11/28/95), 665 So.2d 547, 550. Additionally, the contract provided that Heck would regularly bill the parish council on a monthly basis for the services performed. Moreover, demand was made by Heck on numerous invoices, setting forth the amounts due for services performed. Accordingly, under these circumstances, we find no manifest error in the trial court's conclusion that the transactions between the parties constituted an open account. See Dear, 93-1188 at p. 3, 637 So.2d at 747.
Breaux further argues, however, that even if this matter is properly considered a suit on open account, the trial court nonetheless erred in awarding attorney's fees where Heck did not comply with the requirements of LSA-R.S. 9:2781. Attorney's fees may be recovered under LSA-R.S. 9:2781(A) only if the plaintiff "sends written demand therefor correctly setting forth the amount owed." (Emphasis added). This language has been interpreted to require that the demand letter correctly set forth the amount due at the time the letter was written. Sears, Roebuck & Company v. Larose, 460 So.2d 8, 9 (La. App. 1st Cir.1984).
According to Breaux, the amounts set forth by Heck in his June 28, 2001 and October 19, 2001 demand letters were incorrect, and, accordingly, attorney's fees should not have been awarded. Specifically, he contends that the total amount claimed to be due in the June 28, 2001 demand letter included a charge in the amount of $7,112.12 for the work performed by Heck in Terrebonne Parish, most of which was disallowed by the trial court. With regard to the June 28, 2001 demand letter, we agree that the letter asserted a claim for an amount due and owing that was ultimately determined not to be the correct amount owed, in that the $7,112.12 charge contained therein was largely disallowed by the trial court. The Louisiana Supreme Court has directed that this statute must be strictly construed in that it is penal in nature and, thus, that where the amount demanded is incorrect, attorney's fees should not be awarded. Frank L. Beier Radio, Inc. v. Black Gold, *608 Marine, Inc., 449 So.2d 1014, 1015-1016 (La.1984). Accordingly, we are constrained to conclude that attorney's fees should not have been awarded under LSA-R.S. 9:2781 for claims set for in the June 28, 2001 demand letter, and the trial court erred in making such an award.[10]
Heck also sent an October 19, 2001 demand letter for services rendered after the date his contracts were allegedly terminated by Breaux, totaling $85,044.24. This demand letter did not include the disputed amount of $7,112.12 for invoice number 00-21. Breaux contends that the amount set forth in this demand letter is also incorrect, because these charges were for services performed after Breaux terminated Heck's contracts and, thus, were not owed to Heck. We find no merit to this argument. As determined above, Breaux did not have the authority to unilaterally terminate Heck's contracts. Accordingly, those sums were in fact due and owing to Heck, and the demand letter properly set forth these amounts as due.
However, Breaux further argues that the amount set forth in the October 19, 2001 demand letter was incorrect in that it did not set forth a credit against the amount due for a payment of $23,945.74 that had been erroneously sent to Heck. However, as alluded to above, the evidence offered at trial regarding this credit or overpayment is sketchy at best. There was no testimony elicited as to when this payment was received by Heck or as to what particular project this overpayment was applied. Thus, on the record before us, we are unable to find support for the argument that the amount set forth in the October 19, 20001 demand letter was incorrect. Accordingly, we conclude that pursuant to LSA-R.S. 9:2781, Heck is entitled to attorney's fees for the invoiced amounts demanded therein. An award shall be prendered accordingly.[11]
With regard to Heck's request for additional attorney's fees with regard to having to institute this appeal and to defend Breaux's appeal, we decline to award any additional sum for attorney's fees, given our rulings herein.

ALLEGED FAILURE TO NAME PROPER PARTY DEFENDANT AND PROPRIETY OF RENDITION OF JUDGMENT AGAINST LAFOURCHE PARISH GOVERNMENT

(Breaux's Assignments of Error Nos. 1 & 2)
In these assignments of error, Breaux contends that the trial court erred in rendering judgment herein against "the Lafourche *609 Parish Government," when the named defendant was in fact "the Lafourche Parish Council." Additionally, he contends that judgment cannot be rendered against the Lafourche Parish Council because it is not a juridical entity.
With regard to the rendition of judgment against the Lafourche Parish Government, a judgment rendered against an individual or entity who is not a party is a nullity. Reed v. Louisiana Board of Pharmacy, 96-1792, p. 6 (La.App. 1st Cir.9/19/97), 700 So.2d 926, 928. Accordingly, we shall amend the judgment rendered herein to name the proper party cast, i.e., the Lafourche Parish Council.
In so doing, we reject Breaux's argument that judgment cannot be rendered against the council because it is not a juridical entity.[12] The determination with regard to juridical status which must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. Roberts v. Sewerage and Water Board of New Orleans, 92-2048, p. 10 (La.3/21/94), 634 So.2d 341, 346-347.
Under the Lafourche Parish Home Rule Charter, the Lafourche Parish Council is the "governing authority" of the parish. It is an autonomous legal entity with regard to its ability to enter into contracts affecting the parish, as authorized by the Home Rule Charter. As such, we conclude that the Lafourche Parish Council is a juridical entity for purposes of being sued for breach of the contracts it is authorized to confect.[13]See Roberts, 92-2048 at pp. 10-11, 634 So.2d at 346-347.

CONCLUSION
For the above and foregoing reasons, the May 3, 2002 judgment is amended to reflect that the party cast in judgment is the Lafourche Parish Council, rather than the Lafourche Parish Government. Moreover, the portion of the May 3, 2002 judgment awarding Heck attorney's fees in the amount of 25% of $40,087.23 on invoice numbers 00-37, 01-02 and 01-19 is reversed.
The portion of the judgment denying Heck's claim for payment of invoice numbers 01-36 and 01-40 is also reversed. Judgment is hereby rendered in favor of Heck and against the Lafourche Parish Council in the principal amount of $68,393.08 for invoice numbers 01-36 and 01-40, with legal interest from the date of judicial demand until paid.
Judgment is also rendered in favor of Heck and against the Lafourche Parish Council for attorney's fees in the amount *610 of 25% of the principal sum of $68,393.08, with interest on that amount.
Heck's request for additional attorney's fees for appeal is denied. In all other respects, the May 3, 2002 judgment is affirmed. Costs of this appeal in the amount of $4,248.29 are assessed one-half each to the Lafourche Parish Council and to Heck.
The motion to dismiss appeal of Lafourche Parish Council, filed by Gerald Breaux, is denied as moot.
AMENDED IN PART; AFFIRMED IN PART; REVERSED IN PART; AND RENDERED. MOTION TO DISMISS APPEAL DENIED AS MOOT.
KUHN, J., agrees in part and dissents in part.
KUHN, Judge, dissenting in part.
I dissent from that portion of the opinion affirming the award of attorneys' fees. The trial court abused its discretion in awarding fees based on 25% of the amount due under the contract. The award should have been based on the amount of fees that Heck actually incurred for legal services or should have been based on the actual number of hours of work involved.
NOTES
[1] We note that the letter did not state which contract was terminated or whether both contracts were terminated, nor did the letter state a cause for termination.
[2] Although both Heck and Breaux testified about this resolution to negate Breaux's attempts to terminate the contracts and reinstate Heck's services, a copy of this resolution was not introduced into evidence.
[3] The court further noted that its ruling that the contracts were terminated may give rise to a suit for what the court termed "wrongful termination."
[4] Interestingly, at the time these contracts were confected and Caillouet was designated as the representative for the parish council therein, the Home Rule Charter specifically provided that the parish president was a member of the parish council. Under the present, amended version of the Home Rule Charter, the parish president no longer holds a seat on the parish council.
[5] Pursuant to the authority of Article 6, Section 5 of the 1974 Louisiana Constitution, the people of Lafourche Parish, on August 14, 1976, adopted a Home Rule Charter, which became effective on October 1, 1976. The Charter was later amended in an election held on January 17, 1998, and became effective as amended in January 2000. See Breaux, XXXX-XXXX at p. 3, 851 So.2d at 1175.

While in Breaux this court interpreted the Charter as amended effective January 2000, the language of Article IV, Section G of both the old Charter and the amended Charter, dealing with contracting authority is the same.
[6] The word "execute" as applied to contracts has been interpreted to mean the signing and delivering of the contract document. Succession of Porche, 273 So.2d 665, 669 (La.App. 4th Cir.), aff'd, 288 So.2d 27 (La.1973), citing Heinbach v. Heinbach, 274 Mo. 301, 202 S.W. 1123, 1130(1918).
[7] This provision regarding the power and functions of the parish president is the same in both the 1976 Home Rule Charter and the 1998 amended version of the Home Rule Charter.
[8] Specifically, the trial court erred in refusing to award the principal sums due on invoice numbers 01-36 and 01-40, which represent services rendered after the date of the attempted termination of the contracts.
[9] Nonetheless, the court found that Heck was entitled to be reimbursed under the theory of quantum meruit or unjust enrichment for these services because he was instructed by the parish president to "negotiate" on behalf of the parish. Thus, the court awarded Heck the sum of $1,009.58 for this claim, the amount billed for Heck's services in "negotiating" with Terrebonne Parish.
[10] The invoices upon which payment was demanded in the June 28, 2001 demand letter were invoice numbers 00-01R, 00-37, 01-02, 01-15, 01-17, 01-19 and 01-21. Of these invoices, the trial court awarded attorney's fees on invoice numbers 00-37, 01-02, 01-19, in the amount of 25% of the principal balance billed on those invoices. The award of attorney's fees as to these particular invoices only is reversed.
[11] The October 19, 2001 demand letter sought payment of invoice numbers 01-26R, 01-32R, 01-34R, 01-42, 01-36 and 01-40. In its judgment, the trial court awarded attorney's fees on invoice numbers 01-26R, 01-32R, 01-34R, which were paid prior to trial. However, given that it declined to award the principal amounts of invoice numbers 01-36 and 01-40 for services rendered after the alleged termination of the contracts, the court declined to award attorney's fees on these invoices. The judgment herein will be amended to award the principal sum of those invoices together with attorney's fees of 25% of the principal sums.
[12] Although Breaux is contending that the Lafourche Parish Council is not a juridical entity against whom judgment can be rendered, we note that Breaux instituted suit against the parish council in the matter ofBreaux v. Lafourche Parish Council, XXXX-XXXX (La.App. 1st Cir.5/9/03), 851 So.2d 1173.
[13] With regard to satisfaction of the judgment, we note that the Article IV, Section G of the Home Rule Charter grants the parish council the authority to authorize, by resolution, a person to execute or sign a check or draft on an account of the governing authority.