[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 30, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14931

_____

D. C. Docket No. 02-80381-CV-DTKH

JIM MOORE INSURANCE AGENCY, INC.,
MICHAEL C. HARTMAN,

Plaintiffs-Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 30, 2005)

Before BARKETT and MARCUS, Circuit Judges, and GEORGE[*], District Judge.

PER CURIAM:

---

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

This appeal comes before us on a dispute between two insurance agents and an insurance company over the ownership of flood insurance policies. Jim Moore Insurance Agency, Inc. and Michael C. Hartman ("Plaintiffs") filed a class action petition alleging contract and tort claims against State Farm Mutual Automobile Insurance Company, Inc, et al. ("State Farm"). The district court denied class certification and, following a bench trial, entered detailed findings of fact and conclusions of law, and rendered final judgment against the Plaintiffs. After thorough review, we affirm.

I.

Plaintiff Jim Moore Insurance Agency, Inc. is an active State Farm agency in Louisiana run by James Moore who executed a "State Farm Agent's Agreement" ("Agent Agreement") in 1982 and who later executed another Agent Agreement on behalf of himself and his insurance agency in 1989. Plaintiff Michael Hartman is a former State Farm agent who maintained agencies in Florida. He executed an Agent Agreement in 1980 which terminated in May 1997.

The Agent Agreement defines the relationship between State Farm and its agents. With respect to ownership of insurance policies, the Agreement states at Section I(D):

Information regarding the names, addresses, and ages of policyholders of the Companies; the description and location of the insured

2

property; and expiration or renewal dates of State Farm policies acquired or coming into your possession during the effective period of this Agreement, or any prior Agreement, except information and records of policyholders insured by the [State Farm] pursuant to any governmental or insurance industry plan or facility, are trade secrets wholly owned by [State Farm].

Ownership of the "trade secrets" is tantamount to ownership of the policies. Thus, State Farm owns its policies except those insured "pursuant to any governmental or insurance industry plan or facility."

At issue in this case are flood insurance policies issued pursuant to the National Flood Insurance Program ("NFIP"), which was established to facilitate flood insurance coverage in high-risk geographic areas. See National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129. These policies were originally written directly through the NFIP (which has since been taken over by the Federal Emergency Management Agency ("FEMA")). In order to facilitate coverage, FEMA created the Write-Your-Own ("WYO") program in 1983 authorizing private insurance companies to issue federal flood policies in their own names.

State Farm joined the WYO program in 1985. As an introduction, State Farm convened a series of meetings with its agents about the WYO program and the agents' options going forward. The agents could continue writing policies directly through FEMA, convert their existing policies to State Farm policies, or allow their existing policies to expire and write renewals through State Farm.

3

Moore converted his existing policies while Hartman wrote renewal policies through State Farm.

In 1986, State Farm distributed an "Announcement to State Farm Agents Concerning the WYO Program" ("Announcement"). State Farm informed its agents that "pursuant to the provision of your Agreement pertaining to additional policies, coverages, or lines of insurance not specifically provided for in your Agreement, this Announcement is made to add the Flood Insurance policy" to agents' Schedule of Payments. Section II.A of the Agent Agreement states that State Farm will compensate "the Agent as set forth in the applicable Schedule of Payments." The Schedule of Payments distributed with the Announcement, in turn, states that "[t]he following graded commission scales shall apply to 'personally produced' policies credited to your account, subject to the provisions set forth in this Schedule of Payments." Included among them is a fifteen percent commission scale applying to new or converted flood insurance policies. State Farm, through its Announcement, drew particular attention to the commission scale for flood insurance and informed agents that "[t]ermination payments apply as with other policies in the same section."

Hartman's Agent Agreement was terminated in 1997. State Farm told Hartman that he was not free to take his flood business with him or transfer it to

another WYO carrier.

Moore inquired whether he was permitted to sell flood insurance through another WYO carrier. State Farm replied that it would violate the Agent Agreement.

On March 15, 2002, the Plaintiffs brought this class action asserting claims against State Farm for conversion, breach of contract, promissory estoppel, tortious interference with existing and prospective business relations, unjust enrichment, and declaratory judgment. The Plaintiffs sought class certification composed of all active and terminated State Farm agents who have written flood insurance policies through the WYO program on or after March 7, 1997.

Thereafter, the district court referred the matter of class certification to the magistrate judge. On May 6, 2003, the magistrate issued a Report and Recommendation that the district court deny the Plaintiffs' motion for class certification. The district court adopted the magistrate's recommendation by order dated September 2, 2003.

Then, on August 30, 2004, following pretrial stipulations and the presentation of testimony and evidence by the parties, the district court rendered judgment for State Farm. Pursuant to Fed. R. Civ. P. 52(a), the court found that "State Farm explicitly amended the Agent Agreements by issuing new Schedule

I(C) of State Farm's 'Schedule of Payments.'" Moreover, the court found that "the Schedule of Payments specifically characterizes the WYO flood policies as 'personally produced' policies," defined as "all policies credited to your account by [State Farm] except . . . policies issued pursuant to any governmental or insurance industry plan or facility." Therefore, the district court concluded that State Farm did not breach its Agent Agreements with the Plaintiffs because the WYO policies were not issued pursuant to any governmental plan, but rather were owned by State Farm. The district court also concluded that State Farm could not have committed any of the other claims alleged by the Plaintiffs for the same reason.

## II.

It is by now axiomatic that in an action tried to the district court without a jury, the district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed. R. Civ. P. 52(a). We will not hold a factual finding to be clearly erroneous unless "after assessing the evidence, we are left with a definite and firm conviction that a mistake has been committed." Am. Dredging Co. v. Lambert, 153 F.3d 1292, 1295 (11th Cir. 1998) (citation omitted). Finally, we review the district court's conclusions of law, including interpretation of the Agent Agreement, de novo. Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d

1060, 1065 (11th Cir. 2004).

The Plaintiffs claim that the district court's opinion should be reversed for two basic reasons. First, the Plaintiffs say that the district court's finding that State Farm amended the Agent Agreement by distributing the new Schedule of Payments was clearly erroneous because the evidence was insufficient to find that State Farm complied with the terms of the Agent Agreement that "no change, alteration or modification of the terms of this Agreement may be made except by agreement in writing signed by an authorized representative of [State Farm] and accepted by you." We disagree.

The absence of a party's signature is not the death knell of a binding contract or amendment. Both Florida and Louisiana law acknowledge that the validity of an agreement may be shown by other actions of the parties. See, e.g., Integrated Health Servs. of Green Brier, Inc. v. Lopez-Silvero, 827 So. 2d 338, 339 (Fla. Dist Ct. App. 2002); Hurley v. Fox, 520 So. 2d 467, 469 (La. Ct. App. 1988) . As explained, "[t]he object of a signature is to show mutuality of assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." Lopez-Silvero, 827 So. 2d  at 339. State Farm communicated its intent to amend the Agent Agreements by distributing the new Schedule of Payments and the Announcement stating as much. And the Plaintiffs signaled their acceptance of

7

the terms by continuing to write flood policies through State Farm after the terms of the new Schedule of Payments were disclosed. Indeed, according to the district court, the Plaintiffs even admitted that the new Schedule of Payments was part of their Agent Agreements. After review of the entire record, we are satisfied that the district court's findings were not clearly erroneous.

Second, the Plaintiffs argue that the district court misinterpreted the Agent Agreement by holding that WYO policies are not policies issued "pursuant to any governmental or insurance industry plan or facility." In particular, the Plaintiffs argue that the WYO flood policies are "governmental" in light of federal regulation of the WYO program. A principle of contract construction recognized in both Florida and Louisiana law is that "where parties contract on a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same becomes a part of the contract." Northbrook Prop. & Cas. Ins. Co. v. R&J Crane Serv., Inc., 765 So. 2d 836, 839 (Fla. Dist. Ct. App. 2000); see also Heck v. Lafourche Parish Council, 860 So. 2d 595, 603 (La. Ct. App. 2003) ("[L]aws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written."). The Plaintiffs say that the application of this principle to the Agent Agreement compels the conclusion that

the WYO flood policies were issued "pursuant to any governmental or insurance industry plan or facility."

Federal regulation of the WYO program, however, is silent on the issue of whether an insurance company or its agents own the WYO policies. Indeed, the only federal regulation bearing on the subject states that "WYO companies may offer flood coverage to policyholders insured by them under their own property business lines of insurance, pursuant to their customary business practices, including their usual arrangements with agents and producers." 44 C.F.R. § 62.23 (emphasis added). Consequently, State Farm and its agents were free to contractually define WYO flood policies as not issued "pursuant to any governmental or insurance industry plan or facility" without running afoul of any federal regulation or case law addressing the nature of such policies. In short, the district court's conclusion that State Farm did not breach the Agent Agreement was amply supported by the language of the agreement and extrinsic evidence adduced at trial.

### III.

Finally, we decline to reach the Plaintiffs' claims regarding the district court's denial of class certification. As has been recognized by our sister circuit, "[the Plaintiffs] certainly ha[ve] no interest in continuing to litigate the class

9

certification issue where [their] own claims, as a matter of law, will not afford the basis for any relief to the class." Kas v. Fin. Gen. Bankshares, Inc., 796 F.2d 508, 519 (D.C. Cir. 1986). State Farm, for its part, expresses no interest in proceeding on the question of class certification. To consider the denial of class certification under these circumstances -- where the district court has entered final judgment for State Farm in all respects -- would amount to little more than an academic exercise. In short, the issues of class certification raised by the Plaintiffs are better left for another day.

AFFIRMED.